THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v JEFFREY ALAN JENKINS, Appellant.

Fourth Department, November 13, 1980

APPEARANCES OF COUNSEL

*Klinger & Zagame (Susan K. Zagame* of counsel), for appellant.

*Robert G. Hurlbutt* for respondent.

OPINION OF THE COURT

HANCOCK, JR., J.

A police officer, after a lawful stop of an automobile, observed a pipe in plain view which he recognized as a "hash pipe". After inspecting and smelling it, he detected

that it contained marihuana residue. Was the seizure of the hash pipe as evidence lawful? This is the pivotal question in defendant's appeal from his conviction on a plea of guilty to one count of criminal possession of a controlled substance in the fifth degree after his motion to suppress the evidence was denied.[1] We hold that the seizure was proper and thus must differ with the Second Department (see *People v Richie*, 77 AD2d 667). We summarize briefly the events leading to the stop, the discovery of the marihuana and the subsequent arrest of defendant for possession of marihuana and other drugs.

In the early morning of April 24, 1979, State Police Troopers Hartman and Jung stopped defendant's car in Oswego, New York because of his erratic driving and because one of the taillights was out. After the stop, Trooper Jung spoke to defendant, who was alone in the car, while Trooper Hartman went to the passenger side of the vehicle to check for possible weapons. Trooper Hartman shined his flashlight on something which caught his attention on the floor in front of the back seat and recognized the object as a small "hash pipe"—a type of pipe which he knew from his training and experience was intended to be used for smoking marihuana and hashish. Defendant does not dispute the nature of the pipe. On picking up the pipe and smelling it, Hartman, based on his expertise, identified as marihuana the burnt residue which was visible in the bowl. Trooper Jung confirmed Hartman's conclusion, and they placed defendant under arrest for possession of a controlled substance. Subsequent searches revealed LSD and cocaine. After waiving his right to counsel, defendant made incriminating oral and written statements.

■ Preliminarily, we observe that the evidence in the record fully supports the court's conclusion that the stop was based upon specific facts which "reasonably warrant [the] intrusion" *(People v Ingle*, 36 NY2d 413, 420, quoting *Terry v Ohio*, 392 US 1, 21; see *Delaware v Prouse*, 440

---

1. The plea was in full satisfaction of the indictment which contained two counts of criminal possession of a controlled substance in the fifth degree and one count of unlawful possession of marihuana.

US 648), i.e., that defendant was driving erratically and that the left taillight on his car was inoperative.[2]

■ We turn to the issue of whether the warrantless seizure of the pipe was justified under the "plain view" exception to the Fourth Amendment warrant requirement. Defendant does not dispute the court's findings that the pipe was a "hash pipe", that it was in plain view, and that its discovery by Officer Hartman was inadvertent. Instead, defendant argues, relying on *Coolidge v New Hampshire* (403 US 443, 464-473), that the seizure was improper because possession of a hash pipe without more is not illegal and that, therefore, it could not have been "immediately apparent" to Officer Hartman when he first observed the pipe before inspecting it that it was "a piece of evidence incriminating the accused" *(Coolidge v New Hampshire, supra,* p 466). We reject defendant's contention and hold that Trooper Hartman's brief inspection of the pipe which revealed the presence of marihuana was permissible and the subsequent seizure and arrest justified. There is no question that Officer Hartman as an expert recognized the pipe as one specifically intended for marihuana and that he knew from his experience and from common sense that a marihuana pipe would very likely contain marihuana residue. The authorities support the view that under these circumstances, Hartman was entitled to examine further (see *People v Rowell*, 27 NY2d 691; *People v Sauger*, 58 AD2d 919; cf. *United States v Robinson*, 414 US 218; *United States v Ochs*, 595 F2d 1247, 1256-1258, cert den 444 US 955, reh den 444 US 1027, and cases cited therein; *Mapp v Warden, New York State Correctional Institution for Women*, 531 F2d 1167, 1172, cert den 429 US 982; *United States v Rollins*, 522 F2d 160, 166, cert den 424 US 918;

---

2. We find no merit to defendant's contention that he should have been permitted to withdraw his plea of guilty at the time of sentencing based upon his presentation to the court of an affidavit from the owner of the automobile (offered as newly discovered evidence) to the effect that the taillight on the car being driven by the defendant at the time of his arrest was not out. The court's finding that the taillight was defective was based on the unequivocal testimony of Troopers Hartman and Jung. The court in denying the motion to withdraw stated that had the testimony of the owner of the car been before him, his finding on this point would have been the same. We find no error in the court's refusal to permit the withdrawal of the plea.

compare case at bar with *People v Corrado*, 22 NY2d 308; *People v McMikle*, 46 AD2d 913; and *People v Colon*, 81 Misc 2d 753, all involving objects which in themselves are not suggestive of criminal behavior).[3] We note that, in contrast to the Second Department's holding in *People v Richie* (77 AD2d 667, *supra*), the Third Department in *People v Sauger* (58 AD2d 919, 920, *supra*) held that where two officers observed what they thought to be the remains of a marihuana cigarette (a "roach") on the floor of defendant's car, "[r]emoval of the roach for the purpose of close examination confirmed the officers' opinion and provided probable cause for the defendant's arrest."

Defendant's inflexible application of *Coolidge v New Hampshire* (403 US 443, 464-473, *supra*) to the effect that Trooper Hartman, although all but certain that he was viewing contraband, could "look but not touch" has been rejected as unrealistic. As the Second Circuit Court of Appeals stated in *Mapp v Warden, New York State Correctional Institution for Women (supra*, p 1172): "[I]t would be somewhat absurd to require an investigator to be oblivious to that which would be apparent to anyone else with normal powers of observation." Here, as in *Mapp*, the additional intrusion involved in picking up the object in plain view and inspecting it was minimal and brief and resulted in immediate discovery of its incriminating nature.

Our holding is consistent with the enunciation of the plain view doctrine in Justice STEWART'S concurring opinion in *Stanley v Georgia* (394 US 557, 569-572), relied upon by both parties, for Justice STEWART makes it clear that it is when the criminal nature of the object in plain view cannot be ascertained from a "mere inspection" that its seizure is prohibited. In *Stanley*, agents searching ap-

---

3. Observation of the pipe alone without the subsequent examination and determination that it contained marihuana would probably not provide probable cause to seize it (see, e.g., *People v Oden*, 36 NY2d 382, and *People v Hester*, 71 AD2d 121, holding that the sighting of glassine envelopes without more does not constitute probable cause; but see *People v Lilienthal*, 22 Cal 3d 891, holding that where an officer saw a distinctively folded paper which, based on his training and experience, he recognized as one which was very likely to contain cocaine or heroin, the observation of the paper alone, without further inspection, constituted probable cause to seize the paper).

pellant's home pursuant to a warrant for evidence of an illegal wagering business came upon films in appellant's desk. In holding that the police conduct in seizing the films after viewing them on a projector and finding them to be obscene violated appellant's Fourth Amendment rights, Justice STEWART, concurring with the majority, wrote: "This is not a case where agents in the course of a lawful search came upon contraband, criminal activity, or criminal evidence in plain view. For the record makes [it] clear that the contents of the films could not be determined by mere inspection" *(Stanley v Georgia, supra,* p 571).

Nor is anything in *Coolidge v New Hampshire* (403 US 443, *supra),* as we read the decision, at odds with our holding here. In *Coolidge,* as contrasted with the case at bar, the evidence suppressed was discovered not inadvertently in plain view but only after meticulous inspection and a vacuuming of defendant's automobile. In his discussion of the reasons underlying the inclusion of the search warrant requirement in our Federal Constitution, Justice STEWART, writing for the majority in *Coolidge,* points out that one of the evils which the framers sought to eliminate was the writ of assistance—"the 'general warrant' abhorred by the colonists"—which permitted "a general, exploratory rummaging in a person's belongings" *(Coolidge v New Hampshire, supra,* p 467). The warrant accomplishes the objective of eliminating this evil through the requirement of a " 'particular description' of the things to be seized" thus keeping the search, where it is permitted, "as limited as possible" *(Coolidge v New Hampshire, supra,* p 467). The mere inspection of the pipe here which revealed the evidence of criminality was clearly not the type of wide-ranging intrusion at which the particularity requirement of the Fourth Amendment was aimed.

The judgment should be affirmed.

SIMONS, J. P., SCHNEPP, DOERR and WITMER, JJ. concur.

Judgment unanimously affirmed.