■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v ROBERT J. DATTILO, Appellant.—Yesawich, Jr., J. Appeals (1) from a judgment of the County Court of Albany County (Harris, J.), rendered November 4, 1985, upon a verdict convicting defendant of the crime of criminal possession of a controlled substance in the first degree,. and (2) by permission from an order of said court, entered February 18, 1986, which denied defendant's motion pursuant to CPL 440.10 to vacate the judgment of conviction, after a hearing.

These appeals are the outgrowth of defendant's arrest and conviction for exclusive and unlawful possession of 6.75 ounces of 87% pure cocaine.

As a result of an anonymous phone call from a male caller indicating that defendant was staying at the Howard John-

son's Motor Lodge in the Town of Colonie, Albany County, and that there was a "situation" developing in his room involving "drugs" or a "hostage", the police investigated. After ascertaining that defendant was in fact registered there, the police knocked on defendant's door, which he opened about six inches—the length of the chain securing it. The police identified themselves and stated that they were investigating a call that there was trouble in his room. Defendant thereupon opened the door fully, at which time one of the officers, an investigator with the narcotics unit of the State Police, saw a triple-beam scale on a shelf as well as a strainer and several small "zip-loc" bags. To this experienced investigator, the presence of these items in a motel room having no kitchen indicated that narcotics were being cut and packaged.

Without objection, the police entered the room. They inquired of defendant whether anyone else was in the room; he replied there was not. When asked if the scale, strainer and baggies were his, defendant declared they were not. To ensure that a "drug rip-off" was not in process or that a hostage situation had not indeed developed, the officers looked about the room, a portion of which was obscured from their view by a wall. This inspection revealed a 12-inch by 12-inch transparent bag, also in plain view lying on a bedside table, which contained a large amount of white powder which the investigator believed was cocaine. The officers seized the bag (subsequent analysis disclosed the presence of virtually unadulterated cocaine having an estimated street value of $40,000). Defendant was then arrested and read his rights. Thereafter, he was indicted for criminal possession of a controlled substance in the first degree, an A-I felony.

Although counsel first retained by defendant was able to negotiate a favorable plea arrangement—reduction of the A-I felony charge, punishable by a mandatory minimum sentence of 15 years to life, to an A-II felony, punishable by a mandatory minimum sentence of 5 years to life, with a promise that the maximum sentence would not exceed 4½ years to life— defendant rejected the bargain, discharged counsel and engaged Armand Riccio, who, defendant alleges, promised to obtain an acquittal.

A suppression hearing was thereafter had. County Court credited the testimony of the investigator—defendant did not testify—and ruled that the items taken from the room, the scale, strainer and baggies, while the product of a warrantless search, were admissible since defendant had consented to the entry of the police, that seizure of the bag of cocaine was

authorized under the plain-view doctrine, and that there was probable cause for defendant's arrest. A trial followed, at which defendant did testify, offering a duress defense. His testimony, that the drugs and drug paraphernalia found in the room, in open view, were the property of a drug dealer to whom defendant's half-brother was indebted and that to clear the debt the dealer expected defendant to produce $17,000 to purchase the drugs by 10:00 P.M. that evening, was rejected by the jury. Convicted of criminal possession of a controlled substance in the first degree, the A-I felony for which he had been indicted, defendant received the minimum sentence allowable, 15 years to life.

Shortly thereafter, defendant moved pursuant to CPL 440.10 to vacate the judgment of conviction, contending that he was deprived of effective legal representation in that Riccio fabricated the duress defense and prevailed upon defendant to give the false testimony which he admittedly gave at the trial. Incident thereto, defendant unsuccessfully sought permission from this court to disclose Riccio's disciplinary file—he had previously been suspended from practicing law—which purportedly contained charges of identical misconduct filed by another criminal defendant. The CPL 440.10 motion was denied and permission to consolidate the appeal therefrom with the appeal of defendant's conviction was granted.

Initially we find unpersuasive defendant's contention that the search and seizure was constitutionally invalid. Crediting the investigator's account of how entry into the room was achieved and the search which followed was conducted, County Court rightfully concluded at the suppression hearing that the entry was consensual and that the officers were vested with authority to seize any objects immediately apparent to them, while in the hallway and then in the room, constituting contraband (see, People v Jenkins, 77 AD2d 353, 355). Not without significance is the fact that County Court had the opportunity to see and hear the investigator, whose testimony was not controverted, testify (see, People v Taylor, 111 AD2d 520, 521, lv denied 66 NY2d 618).

Nor is there merit to defendant's ineffective assistance of counsel contention. An experienced Trial Judge, presiding over the suppression hearing, the trial and a lengthy hearing on the instant CPL 440.10 motion, wrote: "[I]t is crystal clear that the defendant either conceived of and concocted the perjury himself or knowingly and willingly connived with, condoned, and participated in perjury concocted or suggested by his attorney." We agree. Of the nine witnesses testifying at

the hearing generated by the CPL 440.10 motion, only one was truly disinterested, Riccio's former paralegal assistant, and he testified that after the suppression hearing defendant stated to Riccio that "when this is all over I will tell you what really happened", and that this apparently "stunned" Riccio.

An effort to assess the effectiveness of counsel is, at best, a difficult and imprecise exercise. Here, however, the record simply does not lend itself to such a charge. In retrospect, a more advantageous defense than the duress defense pursued may well have been available, to wit, a challenge to the warrantless entry into defendant's room; that, however, is a matter of trial strategy, about which even the most eminent trial counsel often disagree. What the record discloses is an attempt by Riccio, as defendant's counsel, in the course of the suppression hearing and the trial as well, to cross-examine the People's witnesses and to offer proof on behalf of defendant in a manner consistent with the defense offered by defendant. Although that defense was predicated on defendant's perjured testimony, without more that does not mean the representation furnished was necessarily ineffective.

We have considered defendant's other arguments, including the contention that access should have been granted to Riccio's disciplinary file, and find them lacking in merit. Parenthetically, we note that whatever the contents of that file may be relating to other instances of alleged misconduct, they are not relevant in determining the adequacy of the legal representation he provided defendant. Nor would that information be admissible in evidence, for the purpose of disclosing it is improper, namely, to demonstrate that Riccio had a propensity to engage in this kind of misconduct (see, Fisch, New York Evidence § 210, at 121 [2d ed]).

Judgment and order affirmed. Kane, J. P., Main, Mikoll, Yesawich, Jr., and Harvey, JJ., concur.