■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v JEFFRIE RICHARDSON, Appellant. [645 NYS2d 298] —Judgment, Supreme Court, New York County (Felice K. Shea, J.), rendered September 27, 1991 which, after a jury trial, convicted defendant of criminal possession of a controlled substance in the first degree and sentenced him to a prison term of from 17 years to life, is reversed, on the law and the facts, and the judgment is vacated.

It is a fundamental principle that governmental intrusion into the privacy of the home, with very limited exceptions, is prohibited by constitutional limitations in the absence of a valid search warrant (*People v Gonzalez*, 39 NY2d 122, 127; NY Const, art I, § 12; US Const 4th, 14th Amends; *Payton v New York*, 445 US 573, 590). One of the exceptions to the warrant requirement is a voluntary consent to search (*People v Singleteary*, 35 NY2d 528, 532; *People v Nalbandian*, 188 AD2d 328, *lv denied* 81 NY2d 890).

The People have the burden, in the first instance, of demonstrating the propriety of the police conduct and "[w]hen a search and seizure is based upon consent * * * the burden of proof [is] heavily upon the People to establish the voluntariness of that waiver of a constitutional right" (*People v Whitehurst*, 25 NY2d 389, 391; *People v Gonzalez, supra*, at 128). Further, consent to a search is voluntary when it is a true act of the will, "an unequivocal product of an essentially free and unconstrained choice" (*supra*, at 128; *People v Kuhn*, 33 NY2d 203, 208).

In our view, the defendant's act of glancing over his shoulder at another man inside the apartment, which was apparently in response to the officer's inquiry if anything was wrong, and which the officer "took * * * to mean" that he could enter

the apartment, is insufficient to constitute an intentional waiver of a constitutional right. Since the officer never asked to enter the apartment, and no words were spoken, defendant's act of glancing over his shoulder cannot be construed as an invitation for the officer to enter. Accordingly, we find that defendant's simple gesture did not constitute "consent" and, as a result, suppression should have been granted. Concur— Rosenberger, Wallach and Tom, JJ.

Rubin and Kupferman, JJ., dissent in a memorandum by Kupferman, J., as follows: We disagree with the majority and would affirm.

Responding to a radio call that a man was selling drugs in front of 107 West 118th Street in Manhattan, three uniformed police officers entered the lobby of the four story brownstone at that address. As they proceeded towards the stairs to the second floor, one of the officers heard the apartment door to his left open. He turned around and saw defendant, who appeared to be leaving the apartment, step into the doorway. The officer approached defendant and inquired whether he was the person who had called the police. At this point, the officer was standing just outside the threshold of the apartment and defendant was standing just inside it. In response to the officer's question defendant did not respond verbally, but shook his head in a negative way. The officer then asked defendant "if anything was wrong, if everything was okay. Again, he shook his head." The officer's attention "was drawn inside the apartment when I asked him if he lived there and he shook his head no, but then he turned toward Mr. McLaughlin [a co-defendant], who was sitting directly behind him, inside the apartment. * * * He shook his head no, stepped back in this fashion * * * turned his body to the side and is looking over his [left] shoulder". The officer took defendant's actions to mean "speak to Mr. McLaughlin or, maybe he could tell you something. That is how I took it." The officer then stepped into the apartment to speak to Mr. McLaughlin and glancing to his right "saw the table with the scale and all the drugs and paraphernalia on it."

After a hearing on defendant's motion to suppress the evidence seized after his arrest, the hearing court, which credited the police officers' version of what happened and found that defendant was not credible with regard to the critical areas of evidence, denied the motion.

We agree with the hearing court that when defendant motioned the officer inside, he had a right to go in and make further inquiry. Once inside the officer had the right to look around the area where he was standing. As he testified: "When-

ever I step in someplace, an apartment, a room, I always check to see what and who was around me for my own safety. We are always trained to take a look around and see if everything is all right so we know who is around you."

Given the minimal intrusion, such action on the part of the police officer was both prudent and reasonable and defendant's suppression motion was properly denied.