■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v WILLIAM SMITH, Also Known as FRANK MILLS, Appellant. [658 NYS2d 259] —Judgment, Supreme Court, New York County (Paul Bookson, J.), rendered March 27, 1995, convicting defendant, after a jury trial, of grand larceny in the third degree, grand larceny in the fourth degree, fourteen counts of offering a false instrument for filing in the first degree, and criminal possession of a forged instrument in the second degree, and sentencing him, as a second felony offender, to concurrent terms of 3½ to 7 years on the conviction of third-degree grand larceny,

2 to 4 years on the convictions of fourth-degree grand larceny and criminal possession of a forged instrument in the second degree, and $1^1/2$ to 3 years on each of the convictions of offering a false instrument for filing in the first degree, affirmed.

Defendant's motion to suppress physical evidence and statements was properly denied. The evidence at the suppression hearing established that on April 27, 1994, at approximately 4:00 P.M., an individual named Sherrill walked into the Midtown South precinct and told Police Officer Joseph Gallo that he had been assaulted earlier in the day by a man he knew as "Will." Sherrill informed Gallo that Will was staying at 330 West 36th Street, apartment 708, and Sherrill led Gallo there.

When they arrived at the apartment, Gallo observed defendant inside through the wide-open front door. Sherrill pointed out defendant as the man named Will who had assaulted him, and Gallo then knocked on the door and asked defendant about the incident. Defendant admitted having had an argument with Sherrill. Gallo asked defendant for identification, and defendant initially reached for his pocket, but then told Gallo he did not have it.

Defendant then began to walk toward a dresser inside the apartment. Gallo followed defendant into the room to make sure that defendant did not produce a gun or knife from the dresser. Gallo testified that he wanted to see what defendant was doing with his hands, and did not want defendant to have his back to him in case he retrieved a weapon. Gallo's gun was holstered at all times, and he never touched defendant.

Defendant removed one card from his wallet, and then replaced it. He then produced a New York City welfare identification card, bearing his photograph and the name "Frank Mills." Gallo asked him to remove the first card, which turned out to be another welfare identification card, with defendant's photo and the name "William Smith." Gallo asked defendant what "the deal" was, and defendant responded that the latter card was "old" and "no good." Defendant was then placed under arrest.

Defendant claims that the two identification cards should be suppressed because they were recovered pursuant to a warrantless entry and search of his home (see, Payton v New York, 445 US 573). However, the record supports the motion court's determination that the defendant implicitly consented to Gallo's entry. A defendant's consent may be established by conduct as well as by words (People v Satornino, 153 AD2d 595). Here, defendant engaged in a discussion with the officer from inside

the apartment; he complied with the officer's request for identification without hesitation and not even the lightest objection to the officer's entry or continued presence in the apartment was raised. A consensual entry is a compelling inference from these facts (see, People v Davy, 236 AD2d 308; People v Gonzalez [Iris], 222 AD2d 453, lv denied 88 NY2d 848; People v Washington, 209 AD2d 817, lv denied 85 NY2d 944; People v Schof, 136 AD2d 578, lv denied 71 NY2d 1033; but see, People v Richardson, 229 AD2d 316, lv granted 88 NY2d 1026).

In light of the above conclusion, it is unnecessary for us to determine whether Gallo's safety concerns alone would constitute exigent circumstances, or otherwise render the warrantless entry constitutionally permissible.

Denial of suppression of defendant's statements made to Gallo in the apartment was also proper, as defendant was clearly not in police custody at the time they were made (see, People v Yukl, 25 NY2d 585, 589, cert denied 400 US 851).

Defendant's claims pursuant to Batson v Kentucky (476 US 79) are meritless since the striking of three African-American jurors in the first two rounds of jury selection, without more, is wholly inadequate to establish a prima facie case under Batson (see, People v Jenkins, 84 NY2d 1001, 1003; People v Childress, 81 NY2d 263, 267; People v Lynn, 224 AD2d 294, lv denied 88 NY2d 881). Concur—Williams, J. P., Mazzarelli and Andrias, JJ.

Tom, J., dissents in a memorandum as follows: I respectfully dissent and vote to reverse the judgment of conviction based on the illegal entry by the police into defendant's apartment.

On April 27, 1994, Police Officer Gallo accompanied Mr. Sherrill to 330 West 36th Street in Manhattan pursuant to Sherrill's complaint that he was assaulted by a man who was "staying" in apartment 708. When they arrived at the apartment, its front door was completely open and Gallo saw defendant inside, cleaning the one-room apartment.

After Sherrill identified defendant as the one who had assaulted him, Gallo, while still outside the apartment, began to question defendant, who admitted that he had an argument with Sherrill. Gallo then asked defendant to produce some identification. Defendant, who did not have his wallet on him, began to walk over to a dresser in the room to retrieve his wallet. As he turned and proceeded toward the dresser, Gallo stepped into the apartment, purportedly to make sure defendant "wasn't going to produce a knife or a gun", and then followed him to the dresser.

Defendant opened his wallet, extracted, but returned, a

welfare identification card, and then produced a second welfare card, ostensibly identifying him. Officer Gallo then directed defendant to produce the first card, with which he. complied. Only· at that point did the officer notice that the official documents contained different names but each displayed defendant's photograph, providing probable cause to arrest defendant for forgery and filing a false instrument. Defendant was convicted, after a jury trial, of grand larceny in the third and fourth degrees, fourteen counts of offering a false instrument for filing in the first degree and criminal possession of a forged instrument in the second degree.

The United States Supreme Court, in *Payton v New York* (445 US 573, 590), held that "the Fourth Amendment has drawn a firm line at the entrance to the house" and expounded the basic constitutional principle that, absent exigency or consent, searches and seizures within a home without a warrant are presumptively unreasonable and a violation of the search and seizure provision of the Fourth Amendment of the Constitution.

In rejecting the propriety of a warrantless entry and suppressing the fruits of the illegal search, the Court of Appeals stated: "The police had neither a warrant nor consent to enter defendant's apartment. There was an affirmed finding that no exigent circumstances existed; the police themselves cannot by their own conduct create an appearance of exigency." (*People v Levan*, 62 NY2d 139, 146.)

A review of the facts in the instant case clearly reveals that the safety of the officer was not compromised nor was there other exigency to justify a warrantless entry into the subject apartment. Initially, it should be noted that Officer Gallo responded to defendant's residence solely for investigative purposes, and did not conclude that he had a basis for an arrest. Therefore, the need for an arrest warrant as a predicate for entry was not in issue (*cf., People v Harris*, 77 NY2d 434; *cf., People v Levan, supra*).

Officer Gallo had no indication that defendant possessed a weapon: the complainant reported only that he had been beaten; the officer testified that physical wounds were not apparent; at the door to the apartment, Gallo observed no indication of any weaponry; and defendant had made no erratic or threatening moves. As such, the evidence would not justify entry on the basis of the officer's safety (*cf., People v Cloud*, 79 NY2d 786, *affg* 168 AD2d 91 [police received information that suspect in robbery-homicide was in hotel room with guns and hostages]) or other exigency (*supra; cf., People v Rosario*, 179

AD2d 442, *lv denied* 79 NY2d 1053 [entry justified by rape suspect's claim that he had "another girl" inside]).

Nor was entry justified by a plain sight observation of evidence indicating criminal activity from outside the door by an officer lawfully present (*see, People v Dattilo*, 132 AD2d 726, *lv denied* 70 NY2d 799).

Further, the record does not reflect that defendant, by words or action, consented to the illegal entry. When Officer Gallo arrived at defendant's premises, the door was open and defendant, as yet unidentified, could be seen within. It cannot be disputed that had the officer asked his question at the doorstep, he could have achieved the same result legally (*see, People v Kozlowski*, 69 NY2d 761). At no time did the officer request permission to enter, and at no time was permission granted by defendant. Moreover, defendant did not act in any manner that would have implied his consent to the officer's entry, such as opening wider the already open door, or gesturing, or stepping back from the door suggestive of invitation. At most, the record indicates that the defendant simply walked away from the entrance toward a dresser, maintaining his hands in open view, to comply with the officer's request for identification. The officer, uninvited, walked into the apartment. Under the circumstances, consent could not have been imparted since defendant was turned and no longer facing Officer Gallo when he decided to enter the premises.

Although no expressed consent was articulated, under New York law, courts have found consent implicit, and constitutionally viable, when: a defendant responded affirmatively to the officer's request that they speak, impliedly inside the apartment (*People v Dubois*, 140 AD2d 619, *lv denied* 72 NY2d 911); or, the defendant nodded in response to a police suggestion that they speak inside (*People v Murphy*, 55 NY2d 819); or the defendant (*People v Taylor*, 111 AD2d 520), or another occupant (*People v Washington*, 209 AD2d 817, *lv denied* 85 NY2d 944; *People v Davis*, 120 AD2d 606, *lv denied* 68 NY2d 769; *People v Satornino*, 153 AD2d 595), upon answering the police officer's knock, stepped back from the door, allowing entry. However, even under these circumstances, we have reversed when no request to enter was made and the ostensibly invitational gesture, a co-defendant's glance over his shoulder to the defendant inside, did not satisfy the People's "heavy" burden of demonstrating "a true act of the will * * * 'an essentially free and unconstrained choice' " (*People v Richardson*, 229 AD2d 316, *lv granted* 88 NY2d 1026; *People v Gonzalez*, 39 NY2d 122, 128). No objective manifestations connoting even an implicit

consent are present in the case under review. To construe these facts to confer consent authorizing the police officer's entry is inconsistent with and violates the very point of *Payton.*

The majority suggests that the defendant's failure to object to the officer's entry is a basis upon which implied consent can be grounded. In support of this proposition, the majority cites *People v Gonzalez (Iris)* (222 AD2d 453, *lv denied* 88 NY2d 848), *People v Washington (supra)* and *People v Schof* (136 AD2d 578, *lv denied* 71 NY2d 1033). The Third Department's decision in *Washington* addressed two factors: the mode of entry, in which the defendant's mother stepped aside to permit the officers' entry, and the mother's failure to ask them to leave; the first factor was an adequate basis to affirm the judgment. The Second Department's decisions in *Gonzalez* and *Schof,* with no factual development, state only the general principle relied on by the majority, which I would reject as establishing an inadequate predicate for a lawful police entry into a private residence. To adopt such a general principle subtly shifts the "heavy" burden of law enforcement authorities to establish the lawfulness of their warrantless presence in a private home, to impose on the occupant of that residence the burden of ejecting police officers who, having already crossed the threshold without consent, are, by definition, unlawfully present. Logically, this would require a citizen to affirmatively act to enforce a constitutional right which already is violated. This result is illogical and, one may submit, infeasible from the perspective of practical experience. While the failure to object to a police presence already authorized by prior consent may serve to ratify the lawfulness of the entry (*see, People v Velazquez,* 73 NY2d 815), it cannot without such consent rectify an already unlawful entry. I conclude from the evidence that the People have not carried their heavy burden to demonstrate that defendant had impliedly consented to the police officer's entry into his apartment; that there was no evidentiary basis to support a claim of exigency; and that as a matter of law the officer's presence in the apartment was illegal.

The officer's ability to discern the evidentiary potential of the identification cards, and the possible illegality of their possession and use, was facilitated by the officer's close proximity to the defendant. Since that circumstance arose as a consequence of the illegal entry, there is no adequate attenuation between the entry and the generation of the evidence to justify admissibility of the evidence.

Accordingly, I would reverse the judgment of conviction and dismiss the indictment.