OPINION OF THE COURT
Suzanne M. Mondo, J.
Defendant Wil Cyprien is charged with assault in the third *979 degree and harassment in the second degree. On March 23, 1999, a Dunaway /Huntley hearing was held before Judicial Hearing Officer Morris Goldman, who recommended that the defendant’s motion to suppress his statement be granted. The People have moved to controvert the recommendations of the Judicial Hearing Officer.
FINDINGS OF FACT
The court adopts the Judicial Hearing Officer’s findings of fact, which are, essentially: On November 10, 1998, at 10:55 p.m., Police Officer Stephen Bachorik, the only witness to testify,[1] received a radio transmission of a call for help in an apartment at 765 Amsterdam Avenue. By the time Office Bachorik arrived with his partner, the transmission was upgraded to an assault. Four other officers also responded.
Upon arriving at the scene, Officer Bachorik was greeted by the building’s doorman, who informed him that a woman was downstairs, accompanied by her son, and that she was crying because of an argument with her husband. The complainant then came up from the basement and told the officer that she had been arguing with her husband about disciplining their child, and that he had slapped her. She appeared “distraught” and was crying, according to Officer Bachorik. The officer also observed that the complainant had swelling on the left side of her face. Both the complainant and the doorman explained that the husband’s name was Wil Cyprien and that the apartment in question was 3E.[2]
Officer Bachorik went to apartment 3E with three other officers. The officers knocked on the door, stating that they were the police. When the defendant opened the door, the officers asked him his name. Upon learning that he was Wil Cyprien, the officers entered the apartment to handcuff the defendant. The officers brought the defendant down to the lobby, where the complainant identified him. The defendant was then brought to the precinct, where the arrest was processed. The defendant did not say anything.
At the precinct Officer Bachorik read the defendant Miranda warnings. Then, without being asked any questions, the defendant stated, according to Officer Bachorick, that “the fight with *980 his wife was about his wife verbally disciplining his child. She had a shoe in her hand, he was afraid she was going to do something with the shoe.”
CONCLUSIONS OP LAW
At the hearing, the defendant conceded that there was probable cause for his arrest, but argued that his statement should be suppressed because the police entered his apartment without consent when they arrested him, “a clear Payton violation.”
The Judicial Hearing Officer recommended denial of the Dun-away motion, concluding that the police had probable cause to arrest the defendant. As to the Huntley motion, the Judicial Hearing Officer found that the Miranda warnings were properly issued, although Miranda warnings were not required because the defendant volunteered a statement without being questioned.
However, the Judicial Hearing Officer concluded that the defendant’s rights were violated when the police entered the defendant’s apartment to arrest him without the defendant’s consent. Thus, the Judicial Hearing Officer recommended that the statement be suppressed because it was a product of the illegal arrest.
The People argue in their motion to controvert that the police entered the defendant’s apartment with consent because “the complainant, who shared Apartment 3E with Mr. Cyprien, consented to the entry of police into the apartment for the purpose of arresting Mr. Cyprien.” Conceding that the complainant did not explicitly consent, the People contend that “the complainant’s consent was implicit from both her call for help to 911 and her instructions to P.O. Bachorik as to the defendant’s location.”
The defendant concedes that a party other than the defendant may consent to a warrantless police entry into a private dwelling, and does not dispute that a wife who shares an apartment with her husband has the authority to consent. However, the defendant contends, “[i]n cases involving consent of a third party, the third party must be present in the dwelling to be searched. Cases illustrating valid third party consent invariably show that the party providing consent is physically present and physically opens the door, thus physically admitting police into the dwelling.”
At a suppression hearing, the burden of going forward is on the People to show the legality of the police conduct. Once this *981 burden is met, the burden is upon the defendant to prove the illegality of the search or seizure by a preponderance of the evidence. (People v Berrios, 28 NY2d 361 [1971].)
Payton v New York (445 US 573 [1980]) held that, unless exigent circumstances exist, the police may not enter a suspect’s home without consent to make a warrantless arrest. “[Statements obtained from an accused following an arrest made in violation of Payton are not admissible under the State Constitution if they are the product of the illegality.” (People v Harris, 77 NY2d 434, 440 [1991].)
Consent to enter or search a home may be given by the defendant or a co-occupant. (People v Cosme, 48 NY2d 286, 292 [1979].) Thus, consent can be given by a spouse (see, e.g., People v Riggins, 178 Misc 2d 12, 18 [Sup Ct, Monroe County 1998] [husband had authority to consent, even though he had informed investigators that he had moved out a few days earlier]), or a “common-law” spouse (see, e.g., People v Jackson, 170 Misc 2d 478, 480 [Crim Ct, Bronx County 1996] [common-law wife had authority to consent to search of defendant’s drawer in their bedroom]). Moreover, the police may rely in good faith on a family member’s apparent authority to consent to enter or search a home. (People v Adams, 53 NY2d 1, 9-10, cert denied 454 US 854 [1981].) “[W]here the searching officers rely in good faith on the apparent capability of an individual to consent to a search and the circumstances reasonably indicate that that individual does, in fact, have the authority to consent, evidence obtained as a result of such a search should not be suppressed.” (Supra, at 9; see, e.g., People v Hill, 260 AD2d 216 [1st Dept 1999] [the police reasonably believed that the defendant’s sister had apparent authority to consent to entry and search of the defendant’s apartment where she “willingly escorted the police and her boyfriend into the apartment at 2:45 a.m., watched television, ate and freely moved about the apartment, all with the knowledge and acquiescence of her mother, the lessee”]; People v Hardgers, 222 AD2d 1038 [4th Dept 1995], Iv denied 87 NY2d 1020 [1996] [searching officers were found to have relied in good faith on the “apparent capability” of the defendant’s 16-year-old sister to consent to a search].)
Thus, defendant Cyprien’s wife (the complainant) had the authority to consent to the police entry into their apartment. Indeed, the defendant does not contest that his wife had the authority to consent. Nonetheless, the defendant argues that his wife never consented because she did not explicitly tell the *982 police to enter the apartment or open the door for them to enter. However, consent to enter an apartment does not have to be explicit. Just as “[a] defendant’s consent may be established by conduct as well as words” (People v Smith, 239 AD2d 219, 220 [1st Dept], Iv denied 90 NY2d 911 [1997]), “tacit consent by a person with apparent authority * * * [is] sufficient to obviate any possible violation of the Payton rule” (People v Schof, 136 AD2d 578, 579 [2d Dept], Iv denied 71 NY2d 1033 [1988] [the defendant’s uncle, “a person with ostensible authority on the premises,” tacitly consented to the police presence “by failing to direct them to leave or by in any other fashion indicating that they did not have his permission to remain”]).
People v Satornino (153 AD2d 595 [2d Dept 1989]) most closely resembles the instant matter. The defendant appealed the denial of his motion to suppress his statements, claiming that his warrantless arrest in his home was a Payton violation. The Court held that the defendant’s mother, who owned the home, had consented to the detectives’ entry, reasoning that “[c]onsent can be established by conduct as well as words” {supra, at 595). The Court explained that “the defendant’s mother told the detectives that her son was in his bedroom and pointed to the room. Thus, by her words and conduct she indicated her consent.” {Supra, at 595.) Similarly, the instant complainant directed the police to her apartment so that they could arrest her husband there. Because this is allegedly an incident of domestic violence where the police may seek to separate the parties, it is not surprising that the complainant did not accompany the police, but instead sent them to the apartment to arrest the defendant. Thus, the complainant here also indicated her consent “by her words and conduct.”
Even if the court were to hold that when the police entered the apartment to arrest the defendant, they did so without consent in violation of Payton, the defendant’s statement would not be suppressed because any taint resulting from the violation has been attenuated. (See, People v Harris, 77 NY2d, supra, at 437.) To determine whether a defendant’s statement is sufficiently attenuated from an illegal arrest, the factors to be considered are: “the temporal proximity of the arrest and the confession, the presence of intervening circumstances and, particularly, the purpose and flagrancy of the official misconduct.” (People v Conyers, 68 NY2d 982, 983 [1986].) In the instant case, there was a two-hour delay between the arrest and the defendant’s statement. The defendant was *983 administered Miranda warnings. His statement was made spontaneously, rather than in response to questioning. Additionally, the police conduct was proper. Thus, the statement was not the product of an illegal arrest.
Accordingly, the People’s motion to controvert the Judicial Hearing Officer’s recommendation is granted and the defendant’s motion to suppress his statement is denied.

. The Judicial Hearing Officer found Officer Bachorik to be credible.

. The radio transmission had also indicated that apartment in question was 3E.