[9 NYS3d 525]

THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v ROLLIN POINVIL, Appellant.

Supreme Court, Appellate Term, Second Department,
2d, 11th and 13th Judicial Districts, April 3, 2015

### APPEARANCES OF COUNSEL

*Steven Banks, The Legal Aid Society*, New York City (*Lawrence T. Hausman* and *Michael Kang* of counsel), for appellant.

*Kenneth P. Thompson, District Attorney*, Brooklyn (*Leonard Joblove, Seth M. Lieberman* and *Terrence F. Heller* of counsel), for respondent.

### OPINION OF THE COURT

MEMORANDUM.

Ordered that the judgment of conviction is affirmed.

Following a nonjury trial, defendant was convicted of menacing in the third degree (Penal Law § 120.15), attempted criminal possession of a weapon in the fourth degree (Penal Law §§ 110.00, 265.01 [2]), and harassment in the second degree (Penal Law § 240.26 [1]). Defendant's conviction was based on an incident that occurred during the early morning hours of September 12, 2009. At approximately 4:00 a.m., defendant drove home from his job at a car service. Defendant lived on the second floor of the home with his mother. The complainants, defendant's half sister and her husband, lived with their children on the first floor. When defendant arrived home, he was unable to park in the driveway because defendant's brother-in-law had locked and chained the driveway gate.

According to the trial testimony of the complainants, defendant entered the home and made very loud noises, culminating in his banging loudly on the complainants' door. When defendant's half sister opened the door, defendant allegedly swung a kitchen knife in the direction of her face. She immediately slammed the door shut and called the police. The complainants permitted the police to enter the home. After an investigation, the police recovered a knife from defendant's bed and arrested him. Defendant testified on his own behalf at the trial and denied that he had swung a knife at his half sister. Instead, he claimed that his brother-in-law had thrown a pole at him.

The testimony at a pretrial suppression hearing established that two police officers had responded to a radio call and entered the complainants' dwelling area. One of the officers walked to the bottom of the stairs leading to the second floor, and yelled whether "Rollin was upstairs." Defendant came to the top of the stairs and identified himself. He permitted the officers to come upstairs and speak to him. The officers did not have their guns drawn, and defendant was not handcuffed or immediately taken into custody. While speaking to defendant in the hallway, near the top of the second-floor stairway, one of the officers noticed a kitchen knife "in clear view" on a bed in defendant's nearby, well-lit bedroom. The officer recovered the knife. After the suppression hearing, the court denied the branch of defendant's omnibus motion seeking to suppress the knife, on the grounds that defendant had consented to the police entering his dwelling area, and that the knife that was recovered had been in plain view.

The hearing court correctly denied the branch of defendant's omnibus motion seeking to suppress the knife. Absent consent

or exigent circumstances, a warrantless search and/or arrest inside a defendant's home is presumptively unreasonable, and any evidence recovered must be suppressed (*see Payton v New York*, 445 US 573 [1980]; *People v McBride*, 14 NY3d 440, 445 [2010]; *People v Levan*, 62 NY2d 139, 144 [1984]; *People v Watson*, 115 AD3d 687, 688 [2014]; *People v Taylor*, 7 Misc 3d 126[A], 2005 NY Slip Op 50400[U] [App Term, 2d Dept, 2d & 11th Jud Dists 2005]). The People bear a heavy burden of establishing that the search was based on consent, that the defendant voluntarily waived his Fourth Amendment rights and his rights under article 1, § 12 of the New York State Constitution, and that there was no coercion, subtle or otherwise (*see People v Gonzalez*, 39 NY2d 122, 127-130 [1976]; *People v Whitehurst*, 25 NY2d 389 [1969]). The determination whether the People met their burden is a question of fact based on the totality of the circumstances (*see Schneckloth v Bustamonte*, 412 US 218, 248 [1973]; *People v Quagliata*, 53 AD3d 670 [2008]).

Factors to consider in determining the voluntariness of consent are whether the consenter (1) was in custody or under arrest; (2) was confronted by a large number of police or law enforcement officials; (3) had been evasive or uncooperative; and (4) was advised of the right to refuse. In addition, the background of the consenter is a factor (*see People v Gonzalez*, 39 NY2d at 127-130; *People v Taylor*, 7 Misc 3d 126[A], 2005 NY Slip Op 50400[U] [2005]).

 In the case at bar, two uniformed police officers asked defendant if they could come up to the second floor of the home and speak to him. The officer who testified at the hearing indicated that defendant said, "okay." While one of the officers may have yelled toward the second floor to get the occupants' attention, and defendant was not told that he had the right to refuse, only two police officers responded to the call. They approached defendant, in a nonconfrontational manner, with their guns holstered. Defendant was not handcuffed or in custody. He had not been evasive or uncooperative. Thus, the record supports the hearing court's determination that defendant consented to the presence of the officers in his dwelling area on the second floor (*see People v Minley*, 68 NY2d 952, 953-954 [1986]; *People v Sancho-Hernandez*, 106 AD3d 841 [2013]; *People v Jaramillo*, 97 AD3d 1146, 1147-1148 [2012]; *People v Nielsen*, 89 AD3d 1041, 1041-1042 [2011]; *People v Quagliata*, 53 AD3d at 670; *People v Folkes*, 43 AD3d 956 [2007]; *People v*

*Ashcroft*, 33 AD3d 429 [2006]; *see also People v Diviesti*, 101 AD3d 1163, 1163-1164 [2012]; *cf. People v Riffas*, 120 AD3d 1438 [2014]; *People v Lott*, 102 AD2d 506 [1984]).

After walking upstairs, the officers interviewed defendant in the hallway of the second floor, near the landing of the stairs. The officer properly recovered the knife from defendant's bedroom in accordance with the plain view doctrine, as the knife was clearly visible on defendant's bed (*see People v Brown*, 96 NY2d 80, 88-89 [2001]; *People v Jaramillo*, 97 AD3d at 1147).

■ The complainants had purchased the house from defendant's mother in 2007. Sometime thereafter, but before this incident, defendant's mother had commenced a civil action against the complainants. Contending that the complainants had a motive to fabricate their allegations against defendant, counsel sought to ask defendant's half sister during cross-examination about the civil action—whether she and her husband had agreed to permit defendant and his mother to live on the second floor of the home, rent-free, and whether the complainants were behind on their mortgage payments. The court permitted defendant's counsel to cross-examine defendant's half sister as to whether an agreement existed to provide defendant with a residence or a place to live at the home, rent-free, and whether the contract of sale provided that defendant had "a continuing right to live in the house." The court did not permit questions regarding the mortgage and the civil action.

Evidence establishing a motive of a witness to fabricate is never collateral and cannot be excluded on that ground. However, examination of a witness to establish such a motive must have some good faith basis. The trial court has broad discretion to limit the scope of cross-examination when the questions concern collateral matters designed to impeach the witness's credibility (*see Delaware v Van Arsdall*, 475 US 673, 679 [1986]; *People v Rivera*, 98 AD3d 529 [2012]; *People v Delcarpio*, 221 AD2d 359, 360 [1995]). The trial court, in the exercise of its discretion, may properly exclude such evidence where it is too remote or speculative, irrelevant or marginally relevant, or poses a danger of misleading a jury (*see People v Hudy*, 73 NY2d 40, 57 [1988]; *People v Strzelecki*, 108 AD3d 644, 645 [2013]; *People v Francisco*, 44 AD3d 870, 870-871 [2007]; *People v Ocampo*, 28 AD3d 684, 685 [2006]; *People v Stewart*, 188 AD2d 626, 627 [1992]; *People v Hart*, 21 Misc 3d 134[A], 2008 NY Slip Op 52198[U] [App Term, 2d Dept, 2d & 11th Jud Dists 2008]).

Here, the Criminal Court struck a balance by permitting cross-examination as to whether the complainants and defendant's mother had agreed when the house was sold that the mother and defendant could live on the second floor, rent-free. Had defendant's half sister answered in the affirmative, defendant would have been able to argue that she had a motive to falsely allege that defendant swung a knife at her. Whether the complainants were behind on their mortgage was only marginally relevant and speculative on the issue of whether they falsely alleged that defendant had committed a crime because they wanted him out of the house. Similarly, it is highly speculative that the complainants fabricated their allegations because they were the defendants in the civil action brought by defendant's mother. Defendant was not a party to the action, and there is no allegation that the complainants asserted any counterclaims.

Thus, the Criminal Court did not improvidently exercise its discretion in limiting cross-examination regarding the sale of the house, the mortgage, and the mother's civil action against the complainants.

Accordingly, the judgment of conviction is affirmed.

PESCE, P.J., WESTON and ELLIOT, JJ., concur.