■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v MICHAEL BARNES, Appellant. [11 NYS3d 669]—

Appeal by the defendant from a judgment of the Supreme Court, Queens County (Latella, J.), rendered August 18, 2011, convicting him of criminal possession of a weapon in the second degree and possession of burglar's tools, upon a jury verdict, and imposing sentence. The appeal brings up for review the denial, after a hearing (Gavrin, J.), of that branch of the defendant's omnibus motion which was to suppress physical evidence.

Ordered that the judgment is affirmed.

The defendant contends that the hearing court improperly denied that branch of his omnibus motion which was to suppress physical evidence retrieved from the trunk of his vehicle during a traffic stop because the testimony of the police officers at the pretrial suppression hearing that he voluntarily opened his trunk was incredible and patently tailored to overcome constitutional objections. Contrary to the People's contention, the defendant preserved this argument for appellate review by,

inter alia, specifically challenging the testimony of the police officers and arguing at the hearing that the testimony of the respective police officers was irreconcilable and inconsistent, and conflicted with testimony given before the grand jury (*cf. People v Taylor*, 120 AD3d 519, 520 [2014]; *People v Inge*, 90 AD3d 675 [2011]).

Nevertheless, the hearing court did not err in denying that branch of the defendant's omnibus motion which was to suppress the physical evidence. "The credibility determinations of a hearing court are entitled to great deference on appeal, and will not be disturbed unless clearly unsupported by the record" (*People v Taylor*, 120 AD3d at 520 [internal quotation marks omitted]; *see People v Prochilo*, 41 NY2d 759, 761 [1977]; *People v Richardson*, 118 AD3d 821 [2014]; *People v Louis*, 99 AD3d 725 [2012]). Contrary to the defendant's contention, the respective testimony of the police officers was not incredible as a matter of law, as it was not manifestly untrue, physically impossible, contrary to experience, or self-contradictory (*see Matter of Sherrod H.*, 116 AD3d 954 [2014]; *People v Lynch*, 63 AD3d 959 [2009]; *People v James*, 19 AD3d 617 [2005]). Moreover, in exercising our factual review power, we find no basis in the record to disturb the hearing court's credibility determination (*see People v Granger*, 122 AD3d 940 [2014]). Any inconsistencies in the officers' testimony did not establish that the testimony was tailored to nullify constitutional objections and did not render the testimony incredible or unreliable (*see People v Blake*, 123 AD3d 838 [2014]; *People v Hopkins*, 244 AD2d 357 [1997]; *People v Gonzalez*, 224 AD2d 322 [1996]; *People v Thomas*, 175 AD2d 852 [1991]). Mastro, J.P., Dickerson and Maltese, JJ., concur.

Barros, J., dissents, and votes to reverse the judgment, on the law and the facts, grant that branch of the defendant's omnibus motion which was to suppress physical evidence, and dismiss the indictment, with the following memorandum: Since the People failed to meet their heavy burden in establishing that the defendant voluntarily consented to the search by law enforcement officials, I dissent.

When the People rely on consent to justify a search or seizure, "they bear the 'heavy burden' of establishing that such consent was freely and voluntarily given" (*People v Marcial*, 109 AD3d 937, 938 [2013], quoting *People v Gonzalez*, 39 NY2d 122, 128 [1976]; *see People v Whitehurst*, 25 NY2d 389, 391 [1969]; *People v Quagliata*, 53 AD3d 670, 671 [2008]; *People v Vasco*, 191 AD2d 602, 603 [1993]). "Implicit in this concept is that the testimony offered by the People in first presenting

their case must be credible" (*People v Quinones*, 61 AD2d 765, 766 [1978]; *see People v Berrios*, 28 NY2d 361, 368 [1971]). "[C]onsent to a search is voluntary when it is a true act of the will, 'an unequivocal product of an essentially free and unconstrained choice'" (*People v Richardson*, 229 AD2d 316, 316 [1996], quoting *People v Gonzalez*, 39 NY2d at 128). "Voluntariness is incompatible with official coercion, actual or implicit, overt or subtle" (*People v Gonzalez*, 39 NY2d at 128).

In assessing the voluntariness of a defendant's consent, the court should consider the totality of the circumstances, including whether the defendant was in custody or under arrest, whether the defendant was confronted by a large number of police agents, whether the defendant had been evasive or uncooperative prior to giving consent, the past experience of the defendant in dealing with law enforcement, and whether the defendant was advised of a right to refuse consent (*see id.* at 127-130; *People v Poinvil*, 47 Misc 3d 79 [2015]).

Despite the presence of guns and burglar's tools in the trunk of the defendant's vehicle, the People claimed that the defendant nonetheless voluntarily consented to the search of his trunk. The People produced two witnesses, Officer Stanos and Officer Oliva. Officer Stanos testified that on April 10, 2009, at 4:00 a.m., he and his supervisor, Sergeant Smith, pulled the defendant's vehicle over for speeding. Officer Stanos admitted that he did not recall the sequence of events, but refreshed his recollection by looking at his memo book. According to Stanos's refreshed recollection, the defendant produced a valid interim license, a passport, the vehicle registration, and insurance card. Officer Stanos searched for the license plate number in his computer, and found that the vehicle was listed as "impounded." At trial, the People stipulated that the vehicle had previously been impounded for unpaid parking violations, that the judgment was satisfied, a receipt was issued, and that the vehicle had been released from impound nine days before the subject stop.

Because the name on the registration did not match the name on the insurance card, and the car was listed as impounded, Officer Stanos called for backup to assist with the investigation. He did not recall any conversations that he had with the defendant, and he did not testify as to the significance of the "impounded" listing on his computer.

Despite the presence of Sergeant Smith at the scene, Officer Oliva took over the investigation as soon as he arrived with his partner. At that time, four officers were present. Officer Stanos did not recall whether the defendant was asked to open the

trunk, but "at some point," the defendant and his passenger exited the vehicle, and he thought that they were looking for paperwork, "something like that, maybe the registration they were looking for."

The second witness, Officer Oliva, testified that Sergeant Smith, the patrol supervisor, called for assistance. He testified that the defendant produced an interim license, insurance card, and a passport, but not a registration. As such, the officers asked the defendant to search his vehicle for the registration. The defendant searched through the entire car, including the glove box, center console, magazine holders, and under the seats.

According to Officer Oliva, the defendant told him that the registration was possibly in the trunk. Officer Oliva then asked for permission to search the trunk, and the defendant "agreed it was okay, [and] gave us consent to go into the vehicle [to] look for any paperwork for the car." When the defendant opened the trunk, the officers were able to see two handguns in plain view inside an unzipped gym bag. According to Officer Oliva, the vehicle's registration was also found in the trunk.

On cross-examination, defense counsel impeached Officer Oliva's credibility with his prior grand jury testimony that he, not Officer Stanos, pulled the defendant's vehicle over for speeding. Officer Oliva had also previously testified that the defendant did not produce any documentation at all. Officer Oliva did not provide any explanation for his prior contradictory testimony, only stating that he did not recall giving it. Moreover, the criminal complaint also contained Officer Oliva's statement that he estimated the defendant's speed and pulled the defendant over, and that the defendant did not produce any documentation.

"Although, as a general rule, issues of credibility are primarily for the trial court [whose] determination is entitled to great weight on appeal, nevertheless, an appellate court will not hesitate to refuse to credit testimony which has all appearances of having been patently tailored to nullify constitutional objections" (*People v Lebron*, 184 AD2d 784, 784 [1992] [internal quotation marks omitted]; *see People v Lewis*, 195 AD2d 523, 523-524 [1993]). An appellate court shall disregard " 'testimony which is incredible and unbelievable, that is, impossible of belief because it is manifestly untrue, physically impossible, contrary to experience, or self-contradictory . . . even though it is not contradicted by other testimony or evidence' " (*People v Garafolo*, 44 AD2d 86, 88 [1974], quoting 22 NY Jur, Evidence § 649; *see People v Blankumsce*, 66 AD3d 692, 693 [2009]; *People v Miret-Gonzalez*, 159 AD2d 647, 649 [1990]).

Here, based upon the testimony of Officers Stanos and Oliva, the record raises significant questions as to which officers were present at the initial stop, what documentation was produced by the defendant and to whom it was presented, the reason backup was called to assist in the investigation, the reason the trunk was searched, and if, when, to whom, and how consent was obtained from the defendant to search his trunk.

Officer Stanos, who attested that he made the initial traffic stop, testified that he called for backup because the name on the registration did not match the name on the insurance card. Yet, Officer Oliva testified that the sole reason for searching the trunk was that the defendant had not produced the registration. The contradictory testimony of Officers Stanos and Oliva cannot be reconciled.

Officer Oliva's and Officer Stanos's testimony also was inconsistent on the issue of whether the defendant gave verbal consent to the search, or whether he just opened the trunk without being asked.

Officer Oliva's hearing testimony, which was impeached by his prior grand jury testimony and his statement in the criminal complaint, that he, not Officer Stanos, pulled the defendant over for speeding, shows all the hallmarks of having been patently tailored to nullify constitutional objections, and should have been disregarded.

Notably, Sergeant Smith, who supervised both Officer Stanos and Officer Oliva, and was purportedly present at the scene throughout the entire transaction, did not testify at the suppression hearing. In light of her superior rank, it would be expected that she would have been in charge of the investigation, not Officer Oliva, and the People offered no explanation as to why she was not produced at the hearing.

As such, the People's evidence, consisting solely of Officer Stanos's testimony, which did not address the defendant's purported consent to the search, and Officer Oliva's testimony, which was incredible as a matter of law, was not sufficient to meet the People's heavy burden of establishing that the defendant voluntarily consented to the search. Without that evidence, there could not be sufficient evidence to prove the defendant's guilt, and the indictment should, therefore, be dismissed (see People v Miranda-Hernandez, 106 AD3d 838 [2013]; People v Carmichael, 92 AD3d 687 [2012]).

Accordingly, I vote to reverse the judgment, on the law and the facts, grant that branch of the defendant's omnibus motion which was to suppress physical evidence, and dismiss the indictment.