■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v WILFREDO LEBRON, Appellant.—Appeal by the defendant from (1) a judgment of the Supreme Court, Kings County (Huttner, J.), rendered May 18, 1987, convicting him of robbery in the first degree (three counts), upon a jury verdict, and imposing sentence under Indictment Number 2533/86, and (2) two judgments of the same court, both rendered February 26, 1988, convicting him of robbery in the first degree (two counts, one count as to each indictment), upon a jury verdict, and imposing sentence under Indictment Number 3720/86, and a severed count of Indictment Number 2533/86. The appeals bring up for review the denial, after a hearing, of those branches of the defendant's omnibus motion which were to suppress physical evidence, identification testimony, and statements made by the defendant to law enforcement authorities.

Ordered that the judgments are reversed, on the law and on the facts, those branches of the defendant's omnibus motion which were to suppress physical evidence and the defendant's statements made to law enforcement authorities are granted, that branch of the defendant's omnibus motion which is to suppress identification testimony is granted to the extent that the lineup identifications are suppressed, and a new trial is ordered, to be preceded by a reopened *Wade* hearing on the issue of whether there is an independent source for the in-court identification testimony.

The defendant contends that the action of the police in forcibly stopping, detaining, and subsequently searching him deprived him of his right to be free from unreasonable searches and seizures. He further contends that the suppression hearing testimony of the sole officer to testify as to the circumstances of the defendant's arrest was completely unbelievable and untrustworthy and that, therefore, the hearing court erred in denying suppression. We agree.

Although, as a general rule, "issues of credibility are primarily for the trial court [whose] determination is entitled to great weight" on appeal *(People v Garafolo,* 44 AD2d 86, 88), nevertheless, an appellate court will not hesitate to "refuse to credit testimony which has all appearances of having been patently tailored to nullify constitutional objections" *(People v Miret-Gonzalez,* 159 AD2d 647, 649; *see also, Matter of Carl*

*W.*, 174 AD2d 678; *People v Nunez,* 126 AD2d 576; *cf., People v Foster,* 173 AD2d 841; *People v Cruz,* 158 AD2d 293). A reviewing court is not required to "discard common sense and common knowledge" in assessing an officer's hearing testimony *(People v Garafolo, supra,* at 88), and when such testimony appears " 'manifestly untrue, physically impossible, contrary to experience, or self-contradictory' ", it must be rejected on appeal despite the hearing court's findings otherwise *(People v Garafolo, supra,* at 88, quoting from 22 NY Jur, Evidence, § 649). Here, where the arresting officer concededly made several false statements to his superiors about the material facts of his encounter with the defendant, and where other parts of the officer's testimony were so improbable as to be inherently unworthy of belief, the officer's claims as to probable cause to arrest the defendant cannot fairly be credited.

At the suppression hearing, the arresting officer testified that he and his partner were driving westbound on Liberty Avenue in their marked patrol car when an unidentified individual, who had been walking eastbound on the opposite sidewalk, called out to them and told them that the man behind him, who was wearing a brown sheepskin coat, had a gun. The unidentified individual gestured in the direction of the defendant who was also walking down the sidewalk in an eastbound direction about 16 feet behind the unidentified male. The officers did not know who the informant was and did not ascertain his name or any other information from him before he disappeared. The officers pulled up alongside the defendant, exited the patrol car, and approached him. The arresting officer testified that when he was about one foot away, he saw a silvery metallic object in the front pocket of the defendant's coat, so he asked the defendant what was in the pocket. When the defendant began to move his hand toward the pocket, the officer reached in, pulling out a "combination knife and metal knuckles". The defendant was arrested, but a subsequent search revealed that he was not carrying a gun.

Even if the officer's testimony as to the existence of the unnamed, undescribed, disappearing citizen informant is accepted, the disparity between the officer's testimony at the hearing and his prior statements as to the substance of the informant's accusation raises a serious question as to whether the hearing court erred in crediting the officer's claim that the informant furnished him with the quantum of information necessary to justify the stop and frisk of the defendant. For

instance, at the hearing, the officer stated that the informant had told him and his partner that the defendant had a gun. However, he never recorded that fact in his memo book although he was the "recorder" for that shift, and the stop-and-frisk report he claimed to have prepared was never located. Moreover, although the officer testified that the informant did not tell him that the defendant was wanted for robbery, on the request-for-departmental-recognition form that he and his lieutenant signed, the officer had written that the informant had indeed said that the defendant was wanted for robbery. When confronted with this discrepancy, the officer merely said that the statement on the request-for-departmental-recognition form was not true when he wrote it. In addition, the request-for-departmental-recognition form did not even mention the informant's statement that the defendant had a gun. Indeed, the officer did not write anything about a gun or a knife on the form. Further, the arresting officer acknowledged that he had written on the form that the officers had "searched the area" after receiving the description and not, as he had testified, merely walked up to the defendant.

Another contradiction arose with respect to the defendant's conduct immediately prior to the seizure of the weapon. At the hearing, the arresting officer asserted, unequivocally, that he had reached into the defendant's pocket and recovered the weapon. However, he acknowledged that in an interview on the same day as the incident, he had told the interviewing detective that the defendant had reached into his own pocket and handed him the weapon. No explanation for this discrepancy was proffered; instead, the officer merely stated that what he had told the interviewing detective was incorrect. Indeed, the arresting officer admitted that he had not given an accurate story to the interviewing detective.

In a similar situation, where an officer's "Request for Commendation" contained statements inconsistent with his hearing testimony which the officer claimed were simply typing inaccuracies, a hearing court found that the officer's "attempts to rectify the inconsistencies in his testimony with patently false excuses and amended versions of the events in question is more disturbing than the discrepancies themselves and speaks volumes to his credibility" *(People v Akwa,* 151 Misc 2d 106, 109). Reviewing courts presented with similarly unexplained, material inconsistencies or omissions have refused to credit the testifying officer's testimony and have ordered the suppression of evidence so obtained *(see, People v Miret-Gonza-*

*lez, supra,* at 650; *Matter of Carl W., supra; People v Nunez, supra).*

Furthermore, even were we to believe the officer's testimony about an unnamed, unknown citizen informer and find that the officer had the common-law right of inquiry based upon the informant's purported description and the defendant's proximity *(see, People v Hollman,* 79 NY2d 181), the officer's claim that, from the distance of a foot, he was able to see into the defendant's six or seven-inch-deep pocket (which was conveniently "stand[ing] somewhat open" from the coat) and observe a metal object strains credulity. Where a testifying officer claims to have seen that which common sense dictates could not have been seen, courts have repeatedly deemed this testimony patently tailored to meet constitutional objections *(see, People v Miret-Gonzalez, supra; Matter of Carl W., supra; People v Garafolo, supra).*

Given the severely undermined credibility of the arresting officer, it is unclear exactly what happened during the encounter between the officer and the defendant, and the hearing court was confronted with choices of possible scenarios. Under similar circumstances, a hearing court has stated that, where "credibility is in issue, multiple choice questions are neither desirable nor acceptable", and refused to "select a credible version based upon guesswork" *(People v Akwa, supra,* at 110). Likewise, it was error for the hearing court to do so here. Where the legality of a search and seizure is challenged, "the People are * * * put to the 'burden of *going forward* to show the legality of the police conduct. in the first instance *(People v. Malinsky,* 15 N Y 2d 86, 91, n. 2)' " *(People v Berrios,* 28 NY2d 361, 367). Under the circumstances herein, it cannot be said that the People met this burden.

Although we are ordering a new trial, there are a number of other issues which require comment.

The defendant contends that the People's refusal to disclose an Early Case Assessment Bureau (hereinafter ECAB) data sheet as *Rosario* material *(see, People v Rosario,* 9 NY2d 286, *cert denied* 368 US 864) constituted *per se* reversible error. We disagree. The record indicates that the trial court inspected the document, in camera, and concluded that it was not *Rosario* material *(see, People v Ricciardi,* 173 AD2d 495). We find that the trial court properly determined the matter, since the ECAB data sheet in question "merely sets forth the factual details of the crime[s], without attributing the source of its information to any particular individual [and] did not

consist of witnesses' statements" *(People v Mills,* 142 AD2d 653, 654; *cf., People v Rayford,* 158 AD2d 482).

We also find that the court's ruling ordering two separate trials, the first covering three of the charges and the second covering four of the charges, was proper pursuant to CPL 200.20 (2) (b) and (c). The defense theory was one of mistaken identity, and the record supports the trial court's ruling that the defendant's modus operandi in all seven robberies was sufficiently distinctive to make proof of one probative of the commission of another *(see,* CPL 200.20 [2] [b]; *People v West,* 160 AD2d 301; *People v De Meo,* 139 AD2d 758). In addition, all the offenses were "defined by the same or similar statutory provisions and consequently are the same or similar at law" (CPL 200.20 [2] [c]; *People v McNeil,* 165 AD2d 882; *People v Telford,* 134 AD2d 632). In the absence of good cause shown, separate trials for each of the robberies was properly denied *(see,* CPL 200.20 [3]).

Moreover, the trial court did not err when it directed a court officer to instruct the jurors to stop deliberating when they went out to dinner and to a hotel overnight, and not to discuss the case until they returned to court *(see, People v Nacey,* 78 NY2d 990; *People v Brickhouse,* 178 AD2d 541).

We find that the defendant's remaining contentions are either unpreserved for appellate review *(see,* CPL 470.05 [2]) or without merit. Balletta, J. P., Miller, Ritter and Copertino, JJ., concur.