■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v EDDIE LEWIS, Appellant. [600 NYS2d 272] —Appeal by the defendant from a judgment of the Supreme Court, Queens County (Clabby, J.), rendered May 8, 1991, convicting him of criminal possession of a controlled substance in the fourth degree, upon his plea of guilty, and imposing sentence. The appeal brings up for review the denial, after a hearing (Orgera, J.), of that branch of the defendant's omnibus motion which was to suppress physical evidence.

Ordered that the judgment is reversed, on the law and the facts, that branch of the defendant's omnibus motion which was to suppress physical evidence is granted, the indictment is dismissed, and the matter is remitted to the Supreme Court, Queens County, for the purpose of entering an order in its discretion pursuant to CPL 160.50.

The arresting officer testified that on June 14, 1990, at about 1:20 A.M., while he was on routine motor patrol, he saw a 1989 white BMW, with its top down, proceeding on the same street but in the opposite direction of his vehicle. As the cars passed each other at an intersection, the officer reportedly noticed that the driver of the BMW appeared very young and "really short". The officer stated that he could "barely see" the driver's face because he "sat really low in the car" with his head "just a little bit above the steering wheel". Although he had "just a few seconds" to observe the driver, the officer believed that he might be under 17 years of age. The officer proceeded to follow the vehicle and ascertained by a computer check that the car had not been reported stolen. However, the officer followed the car for 20 blocks before he directed the defendant to pull over and asked him for his license, registration and proof of insurance. The defendant claimed that he produced the requested documents, while the officer testified that the defendant did not. In any event, the officer somehow obtained the defendant's name and date of birth. He then returned to his vehicle, ran a computer check, and found that the defendant's license had been revoked. The defendant was arrested and a subsequent search of his person disclosed numerous vials of crack.

While great weight must be accorded the findings of the hearing court (see, People v Prochilo, 41 NY2d 759), a reviewing court should not " 'discard common sense and common knowledge' " in assessing credibility (Matter of Carl W., 174 AD2d 678, 679; People v Garafolo, 44 AD2d 86, 88). Therefore, we should not "credit testimony which has all appearances of

having been patently tailored to nullify constitutional objections" *(People v Miret-Gonzalez,* 159 AD2d 647, 649). For example, "[w]here a testifying officer claims to have seen that which common sense dictates could not have been seen, courts have repeatedly deemed this testimony patently tailored to meet constitutional objections" *(People v Lebron,* 184 AD2d 784, 787). Moreover, " '[t]he police may not use traffic violations as a mere pretext to investigate the defendant on an unrelated matter' " *(People v Smith,* 181 AD2d 802, 803, quoting *People v Llopis,* 125 AD2d 416, 417; *see also, People v Watson,* 157 AD2d 476).

In the instant case, the People failed to carry their initial burden of establishing that the police had reasonable suspicion to stop the defendant's vehicle. First, it is unbelievable that the officer was able to observe, in the middle of the night as the vehicles passed in an intersection, that the defendant appeared to be under the legal driving age. Indeed, the officer conceded that he was barely able to see the defendant's face during the few seconds that he had to make an observation. Further, a review of the defendant's photographs, which were admitted into evidence, shows that he did not appear younger than his age. Even assuming, *arguendo,* that the officer was capable of making such an observation, it makes no sense that he would follow the defendant for about 20 blocks before stopping his vehicle. Contrary to the dissenters' contention, the officer never suggested that it took 20 blocks to enter the license plate numbers into the computer and ascertain that the car was not stolen. Thus, it appears more likely that the officer followed the vehicle with the expectation that he might observe a traffic infraction; but when nothing untoward occurred, the officer decided to pull the car over anyway. Accordingly, we find that the hearing court improperly credited the officer's testimony and the motion to suppress should have been granted *(see, People v Lebron, supra; People v Smith, supra; People v Miret-Gonzalez, supra).* Balletta, Lawrence and Santucci, JJ., concur.

Eiber, J., dissents and votes to affirm the judgment appealed from, with the following memorandum, in which Sullivan, J. P., concurs. It is well settled that issues of credibility are primarily for the hearing court, and on appeal its factual findings should be accorded great weight and not be disturbed lightly *(see, People v Prochilo,* 41 NY2d 759; *People v Gonzalez,* 184 AD2d 525, 526; *People v Foster,* 173 AD2d 841). In the case before us, the hearing court, which had the advantage of seeing and hearing the witnesses, fully credited the arresting

officer's testimony that he stopped the defendant's vehicle because the defendant appeared to be under the legal driving age. Since the hearing court's determination is supported by the record, I cannot agree with my colleagues' conclusion that the arresting officer lacked reasonable suspicion to stop the defendant's vehicle, and I therefore vote to affirm.

Although the majority finds the arresting officer's testimony incredible because he observed the defendant for only a few seconds before forming the opinion that he was under the legal driving age, this conclusion fails to fully take into account the circumstances of the viewing. In fact, the record reveals that when the officer first observed the defendant, he was seated in an open convertible which was approaching the officer's patrol car from the opposite direction. Thus, the arresting officer actually had an ample opportunity to observe the defendant's physical appearance. Moreover, the fact that the defendant was actually 22 years old does not render the officer's claim that he had a more youthful appearance incredible, and, indeed, the hearing court, which had the advantage of personally observing the defendant, agreed that he did appear younger than his actual age. The officer's belief that the defendant might be under the age of 17, which is the minimum age at which an individual in New York can apply for a driver's license (see, Vehicle and Traffic Law § 502), was also supported by his observation that the defendant's head barely reached over the steering wheel. Based upon the defendant's youthful appearance and height, the officer could have reasonably formed the belief that the convertible was being operated by an individual under the legal driving age, justifying a stop and inquiry (see, People v Moro, 101 AD2d 747 [reasonable suspicion that automobile was being operated by a person under age justified stop and inquiry]; see also, People v Jerome, 100 AD2d 397 [ample justification for stop of the defendant's vehicle existed where police, believing the minimum age for renting a car was 25, stopped a rental vehicle because its occupants appeared to be under that age]).

Furthermore, the fact that the arresting officer followed the defendant's vehicle for approximately 20 blocks does not render his explanation for the stop incredible or pretextual. A fair reading of the record indicates that while the arresting officer was following the defendant's convertible, he performed a license plate check on the vehicle, and did not pull the defendant over until he had confirmed that his convertible had not been reported stolen. Since the information that the convertible was not stolen had no bearing on the issue of

whether the defendant was licensed to drive it, the results of the license plate check did not dissipate the officer's reasonable suspicion that the defendant was an underage, unlicensed driver. Under these circumstances, the hearing court properly denied the defendant's motion to suppress the 102 vials of crack cocaine which were recovered from his person following his arrest.