[633 NYS2d 772]

In the Matter of MELISSA O., a Person Alleged to be a Juvenile Delinquent, Appellant. PRESENTMENT AGENCY, Respondent.

First Department, November 14, 1995

## APPEARANCES OF COUNSEL

*Carol Goldstein* of counsel *(Michael Raskin* on the brief; *Lenore Gittis,* attorney), for appellant.

*Margaret G. King* of counsel *(Barry P. Schwartz* on the brief; *Paul A. Crotty, Corporation Counsel* of New York City, attorney), for respondent.

## OPINION OF THE COURT

MURPHY, P. J.

In the early afternoon of April 4, 1994, Officer Hamilton Nunez received a radio run consisting of anonymously provided information to the effect that an Hispanic female with long brown hair and clad in a long black coat, was armed and selling drugs in front of 1803 Archer Avenue in the Bronx. Some eight minutes later he arrived at the designated location where he discovered two other police officers already on the scene. Although neither he nor, apparently, the pair of officers who had arrived before him, saw anyone corresponding to the radio run description in front of 1803 Archer Avenue, Nunez noticed ap-

pellant some 50 feet off crossing Archer Avenue and walking in the direction of Beach Street. Appellant had brown hair and wore a mid-length black jacket. Nunez called out to her but there were several people between them and she did not answer. The officer then ran after appellant who was continuing on in the direction of Beach Street at a normal, unhurried pace. On reaching her, he asked her whether she had a gun. When she did not reply, but simply continued on her way, the officer reached under her outer clothing and ultimately discovered a gun wedged into the small of her back.

It is undisputed that, as the motion court found, there was no ground for a frisk of appellant prior to her failure to respond to the arresting officer's query as to whether she possessed a gun. To that point it is agreed that the officer had, at most, a founded suspicion that criminal activity was afoot and, thus, that while he may have possessed ground for common-law inquiry, he did not have sufficient information to justify a stop and/or frisk of the appellant (see, People v De Bour, 40 NY2d 210); the latter, of course, would have become permissible only upon the officer's receipt of such additional information as would have warranted a reasonable suspicion that a crime had been or was being committed and that it was appellant who was responsible (see, People v Stewart, 41 NY2d 65, 69). The question posed is whether this critical additional informational increment was supplied simply by appellant's silence in the face of the officer's question. We do not think it was.

At the outset, it would be well to recognize that the officer did not, as he set about investigating the situation reported in the radio run, possess presumptively reliable or impressively detailed information. Anonymous tips, such as the one reported in the radio run, are notoriously unreliable; thus even if the tip had included a more distinctive description of the alleged wrongdoer, its utility would still have been quite limited (see, People v Bond, 116 AD2d 28, lv denied 68 NY2d 767). As it was, however, the tip described the wrongdoer simply as an Hispanic female with long brown hair and a long black coat. These are hardly singular attributes along Archer Avenue and it would have been unremarkable if the officer upon arriving at the reported location had seen in the vicinity any number of young women responsive to the provided descriptors. Of course, notwithstanding the very general and nonexclusive description, if appellant had been observed at the scene of the reported illegality or in the vicinity engaging in conduct indicative of

ongoing criminality, the tip would have been substantially confirmed and as such a sufficient predicate for the challenged intrusion, but the tip was not confirmed in these respects, either by Nunez's observations or, apparently, those of the officers who had arrived before him. Instead, all Nunez saw was a brown-haired female walking down the street; whether she was the same brown-haired female referred to in the tip was something Nunez could not have known; indeed, at the time Nunez approached appellant that was a matter for pure conjecture. What must be asked then is whether, when added to this so far entirely conjectural hypothesis of guilt, the mere failure of appellant to respond to Nunez's inquiry may be viewed as justifying a reasonable suspicion of her involvement in crime. It is unarguable that appellant had an absolute right not to respond to Officer Nunez's inquiry (*see*, *People v Howard*, 50 NY2d 583, *cert denied* 449 US 1023; *People v Bright*, 71 NY2d 376, 385), and in the spare informational context in which the inquiry was made affording Nunez no reasonable ground to suppose that appellant, any more than any other brown-haired female in the general vicinity had committed any crime, the only fair inference to be drawn from appellant's silence, which it may be noted was unaccompanied by flight or any other arguably suspicious conduct, was that she simply wished to be left alone and to continue on her way without delay. Given the very tenuous predicate upon which he acted, if Nunez's handling of the situation now appears reasonable, it can only be because a gun was in fact found. But the finding of the gun must, under the circumstances, be viewed more as a fortuity than the product of appropriately focused investigative efforts. Acting upon the same predicate, Officer Nunez might have searched under the outer clothing of any number of completely innocent women who happened to be passing along Archer Avenue. If such indiscriminately intrusive official conduct is inconsistent with the privacy interest at the heart of the Fourth Amendment, and we believe it plain that it is, then it was as wrong in appellant's case as it would have been had the considerable potential for the search of an innocent party been realized.

Accordingly, the final order of disposition of the Family Court, Bronx County (Stewart H. Weinstein, J.), entered on May 31, 1994, adjudicating appellant a juvenile delinquent and finding that she had committed an act which, if done by an adult, would constitute criminal possession of a weapon in the second degree and placing her with the New York State Division for Youth for a period of up to 18 months, should be re-

versed, on the law and facts, without costs, the motion to suppress granted and the petition dismissed.

SULLIVAN, J. (dissenting). Although the radio run itself did not constitute reasonable suspicion, the reliability of that communication was enhanced when, within minutes of the transmission, the information originally possessed by Officer Nunez, " 'considered in conjunction with the attendant circumstances and exigencies, as observed by the police during the encounter' ", provided him with reasonable suspicion that respondent had committed a crime (*People v Grant*, 184 AD2d 242, *lv denied* 80 NY2d 904, quoting *People v Bond*, 116 AD2d 28, 31, *lv denied* 68 NY2d 767). The person referred to in the radio transmission was reportedly not only in possession of a gun but had purportedly just been selling drugs in a high-crime area. According to Officer Nunez, respondent, unlike the several other pedestrians in the immediate case who, in response to his attempts to get her attention by "calling [and] whistling", first looked at him, then at respondent and then back at him, "just kept walking" and did not respond to his inquiry about whether she had a gun. Officer Nunez's level of suspicion thus escalated from what it had been upon his initial approach. As we have had occasion to note, "[T]he frustration of legitimate inquiry may * * * be taken into account in assessing the adequacy of the predicate" for police conduct (*People v Madera*, 189 AD2d 462, 468, *affd* 82 NY2d 775). Accordingly, it was not unreasonable for the officer to infer that respondent, the only person in the given location matching the description of the suspect, posed a danger, not only to himself and the other police officers, but to the general public as well.

Thus, the motion to suppress was properly denied and the order of disposition should be affirmed.

ROSENBERGER and ASCH, JJ., concur with MURPHY, P. J.; SULLIVAN and ROSS, JJ., dissent in a separate opinion by SULLIVAN, J.

Final order of disposition, Family Court, Bronx County, entered May 31, 1994, reversed, on the law and facts, without costs, the motion to suppress granted and the petition dismissed.