■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v MALIK GLENN, Also Known as MALIK GREEN, Appellant. [861 NYS2d 781]—

Appeal by the defendant from a judgment of the Supreme Court, Queens County (Aloise, J.), rendered February 9, 2006,

convicting him of criminal possession of a weapon in the third degree, upon a jury verdict, and imposing sentence. The appeal brings up for review the denial, after a hearing, and upon the recommendation of a Judicial Hearing Officer (Demakos, J.H.O.), of that branch of the defendant's omnibus motion which was to suppress physical evidence.

Ordered that the judgment is affirmed.

At the suppression hearing, the arresting detective (hereinafter the detective) testified that on December 15, 2004, at 10:40 A.M., he observed the defendant exit a white vehicle, walk around to the passenger side of that vehicle, open the passenger side door, and converse with a man who was standing on the adjacent sidewalk. According to the detective, the passenger side door remained ajar as the defendant and the other man conversed. At this point, the detective observed the defendant holding a clear plastic ziplock bag which he believed contained marijuana. Although the detective admitted that there were four traffic lanes and one parking lane separating him from the defendant, the detective unequivocally testified that he could see from his vantage point the defendant holding the plastic bag containing what he believed was marijuana. Thereupon, the detective approached the defendant and placed him under arrest. The detective then looked through the open passenger side door and observed a gun inside the open glove compartment. A subsequent search of the trunk revealed two boxes of ammunition.

The defendant and two of his friends also testified at the suppression hearing. In this regard, the defendant denied holding the marijuana bag in his hands and asserted that after he exited his vehicle, he closed and locked the car doors.

Following the suppression hearing, the hearing court found the testimony of the detective credible and denied that branch of the defendant's omnibus motion which was to suppress physical evidence.

The credibility determinations of a hearing court are accorded great deference on appeal, and will not be disturbed unless clearly unsupported by the record (*see People v Bhattacharjee,* 51 AD3d 684 [2008]; *People v Wynter,* 48 AD3d 492 [2008]; *People v Hay,* 37 AD3d 494 [2007]; *People v Edwards,* 29 AD3d 818 [2006]; *People v Brown,* 24 AD3d 565, 566 [2005]; *People v Parker,* 306 AD2d 543 [2003]) . Here, the record amply supports the hearing court's determination to credit the testimony of the detective that he observed the defendant holding a plastic bag which he reasonably believed contained marijuana and that the gun was in plain view (*see People v Edwards,* 29 AD3d at 818-819).

Contrary to the defendant's contention and our dissenting colleague's view, "[n]othing about the [detective's] testimony was unbelievable as a matter of law, manifestly untrue, physically impossible, contrary to experience, or self-contradictory" (*People v James,* 19 AD3d 617, 618 [2005]). We disagree with the dissent's assertion that the testimony of the detective was illogical and that, to credit his testimony, "one would have to believe that he had X-ray vision." The detective, who, at the time of the hearing, had over 13 years of experience on the police force and was assigned to narcotics "buy and bust" operations, unequivocally testified regarding his observations of the defendant's actions, the marijuana, and the gun. Notwithstanding defense counsel's vigorous cross-examination, the detective remained consistent and steadfast regarding his observations.

The hearing court was in the best position to observe the demeanor, evaluate the testimony, and assess the credibility of all of the witnesses, including the detective and the defendant. To the extent that there may have been certain inconsistencies between the detective's hearing testimony and the criminal court complaint and arrest report, the hearing court was fully apprised thereof. Simply stated, the evidence presented an issue of credibility. In this regard, the hearing court's credibility determination is entitled to great weight on appeal (*see People v Prochilo,* 41 NY2d 759, 761 [1977]), and we discern no basis to disturb it.

Several of the cases relied upon by the dissent are distinguishable. For example, in *People v Lebron* (184 AD2d 784 [1992]), this Court found that the hearing court erred in denying suppression where the arresting officer concededly made several false statements to his superiors about the material facts of his encounter with the defendant, and his testimony was "so improbable as to be inherently unworthy of belief" (*id.* at 785). In *Lebron,* this Court concluded that the officer's testimony that he was able to see into the defendant's six or seven-inch deep pocket and observe a metal object strained credulity. Similarly, in *People v Quinones* (61 AD2d 765 [1978]), the Appellate Division, First Department, rejected the testimony of a police officer, finding it to be "incredible as a matter of law." In that case, it appears that the officer did not testify truthfully when he stated that he came to the scene in response to a radio communication. Moreover, although the officer testified that he was the first on the scene in response to the communication informing that "men with shotguns were in the lobby," he nevertheless stated that he did not have his weapon drawn when he approached the building. In contrast to the

facts in *Lebron* and *Quinones,* the testimony of the detective in the instant matter was neither incredible as a matter of law nor "patently tailored to nullify constitutional objections" (*People v Brown,* 24 AD3d 565, 566 [2005]).

Accordingly, the hearing court properly denied that branch of the defendant's omnibus motion which was to suppress physical evidence. Rivera, J.P., Miller and Dillon, JJ., concur.

Belen, J., dissents, and votes to reverse the judgment, grant that branch of the defendant's omnibus motion which was to suppress physical evidence, and dismiss the indictment, with the following memorandum.

Belen, J. (dissenting). On December 15, 2004, the arresting detective (hereinafter the detective) and two other plainclothes officers were on duty, sitting in an unmarked police car on 41st Avenue and 21st Street in Queens County. This spot was on the shoulder of a street with four moving traffic lanes and parking lanes on either side, leading to and from the Queensboro Bridge.

In the sworn criminal court complaint filed by the detective on that date, he alleged that: "at the abovementioned date, time and place of occurrence, he observed the defendant, Malik Glenn, exit a 1998 Dodge Vehicle, Virginia registration, and speak to another male and while deponent also states the vehicle front door from which the defendant had exited was open and upon looking inside the car observed the glove compartment door open, and in full view, a .45 caliber black taurus firearm loaded with nine live .45 caliber hollow point rounds in the magazine and lying next to the firearm was a second magazine containing ten live .45 caliber rounds."

"Deponent further states that he also recovered from the car's trunk a box of Winchester .45 caliber live rounds, one box of Winchester .9 mm rounds and one small taurus firearm, metal adjustment key attached to the defendant's car key ring."

The complaint asserts that the gun was in plain view, seen by looking into the door that the defendant exited, the driver's side door. However, the arrest report states that the gun was recovered by a "search incidental to lawful arrest." Moreover, in his hearing testimony, the police officer testified that he recovered the gun from the glove compartment after seeing it through the passenger door. He testified that "[t]he glove box was ajar. It was open, as well as the car door, the passenger door." This testimony directly contradicted the sworn felony complaint.

While the majority finds the 13 years of narcotics experience of the detective to be supportive of his version of the search,

this is perhaps the most troubling aspect of this case. One would expect a police officer with 13 years of experience, and by inference, many hundreds of arrests, to be able to complete a straightforward arrest report and sworn felony complaint consistent with each other and with the events at issue.

Although the defendant also was arrested for criminal possession of marijuana in the fifth degree, the complaint does not state where or how the marijuana was found except that it allegedly was in plain view.

At the suppression hearing held six months later on June 2, 2005, the detective testified that he and two other officers from the Queens Narcotics Unit of the New York City Police Department were involved in a "buy and bust" operation on the date in question. While sitting in an unmarked police car, he saw, across four lanes of moving traffic and two parking lanes that the defendant exited his Dodge Intrepid, walked around the back of the vehicle to the passenger side front door, which he opened and left open, contradicting the complaint which states that it was the door that the defendant exited from that was left open.

The detective then allegedly saw the defendant hold a transparent zip-lock sandwich bag containing marijuana and place it in his right front jacket pocket. He stated "I could see it was a quantity of marijuana. It wasn't like pounds; it was a substantial amount." "I saw it in a clear bag. I recovered 23 zip locks containing marijuana from the clear bag." "I could see his hand clenching this object like a baseball, take a ziplock bag and have it like this, you can see it, I saw it."

The detective further observed the defendant engage in conversation with a man on the sidewalk.

The detective, a lieutenant, and possibly another detective, walked up to the defendant. The detective observed that the front passenger door was open and that the glove compartment inside the car was open as well, allowing him to see the gun when he looked inside (in contradiction to the sworn felony complaint). The defendant was then arrested and handcuffed, the marijuana taken from him, the body of his car was searched, and the trunk of his car searched at the precinct. On cross-examination, the detective admitted that the weapon was not seen until after the defendant was handcuffed, thus confirming that the only basis for the arrest was the alleged viewing of the baggie containing marijuana.

There was no testimony corroborating the detective's version of the events. Neither of the other officers present at the scene testified at the hearing and the defendant and his witnesses

provided a completely different scenario. According to the defendant and Gordon Belle, the man who the defendant spoke to on the street, the defendant was on his way to visit his grandmother who lived nearby when he saw his friend Gordon Belle walking down the street. The defendant took a few moments to gather his hat and things, and then got out of his car and locked it. The defendant and Belle were walking towards the Queensbridge homes when the detective and the other two officers pulled up in a black Durango next to the defendant's car and called them back. Two officers approached them. The detective asked the defendant some questions and asked to see his identification and then told the defendant that he wanted to search him. The defendant did not consent to the search, but the detective proceeded to search him anyway and found a ziplock sandwich bag containing 23 small plasticine bags of marijuana in the defendant's jacket pocket. After the detective handcuffed the defendant and led him to a police van, one of the other officers, using the defendant's keys, opened the defendant's car and was heard to yell "jackpot," apparently upon finding the gun in the defendant's glove compartment.

To justify the seizure of the contraband marijuana and weapon, the officers must have had a lawful basis to frisk the defendant and search his vehicle. Here, common sense dictates the complete improbability, if not outright impossibility, of the detective's testimony. It is uncontroverted that the marijuana that the detective seized was encased in a sandwich bag with 23 separate small bags within. Logic dictates that the contents of the bag would be further obscured by the small bags within and it would be impossible to recognize what substance, if any, was in that sandwich bag from any distance, especially, as the officer testified, across five lanes of traffic. At best, he could only have seen a sandwich bag with greenish colored contents, although even that is highly unlikely given his testimony that the bag was balled up in the defendant's hand, permitting only a portion of the bag, at most to be visible. Thus, the entire basis for the arrest of the defendant fails logical scrutiny.

The Supreme Court ruled that the evidence seized was all admissible based upon the report of a judicial hearing officer. A jury convicted the defendant of possession of a weapon in the third degree, but acquitted him of the drug possession charge.

"While great weight must be accorded the findings of the hearing court (*see, People v Prochilo,* 41 NY2d 759 [1977]), a reviewing court should not 'discard common sense and common knowledge' in assessing credibility (*Matter of Carl W.,* 174 AD2d 678, 679; *People v Garafolo,* 44 AD2d 86, 88). Therefore, we

should not 'credit testimony which has all the appearances of having been patently tailored to nullify constitutional objections' (*People v Miret-Gonzalez,* 159 Ad2d 647, 649). For example, '[w]here a testifying officer claims to have seen that which common sense dictates could not have been seen, courts have repeatedly deemed this testimony patently tailored to meet constitutional objections' (*People v Lebron,* 184 AD2d 784, 787)" (*People v Lewis,* 195 AD2d 523, 523-524 [1993]).

As stated in *People v Quinones* (61 AD2d 765, 765-766 [1978]): " '[T]hough a defendant who challenges the legality of a search and seizure has the burden of proving illegality, the People are nevertheless put to the "burden of *going forward* to show the legality of the police conduct in the first instance (*People v Malinsky,* 15 NY2d 86, 91, n. 2)" (*People v. Whitehurst,* 25 NY2d 389, 391 . . .' Implicit in this concept is that testimony offered by the People in first presenting their case must be credible (*People v Berrios,* [28 NY2d 361,] 368). Although the issue of credibility is ordinarily for the trier of facts, the rule must give way where the testimony on appeal is viewed as incredible as a matter of law."

Here, to credit the testimony of the arresting officer, one would have to believe that he had X-ray vision to see and recognize the contents of a plastic baggie, further obscured by 23 other small plastic bags within, and further obscured by the defendant's fist, from across five lanes of traffic. In addition, one would have to believe that the defendant left his car door open and left his glove compartment open, leaving a .45 caliber gun in plain view. One would further have to believe that with this visible, dangerous weapon in plain view the officer first talked to the defendant, allowed the man with him to walk away, and only then brought out handcuffs, despite the fact that there was a gun in easy reach of both men.

Unless one accepts that the officers did see the defendant possessing the bag of marijuana, there was no basis to approach the defendant here. In *People v Rutledge* (21 AD3d 1125 [2005]), the arresting officer testified that he saw the defendant from 50 yards away, in dim light, smoking a substance he discerned to be drugs based upon the duration of the glow as he smoked. The court found that the observed conduct failed to provide a nexus to any criminal act or particularized reason to stop the defendant and request information from him (*see also People v Lewis,* 195 AD2d 523 [1993]; *People v Lebron,* 184 AD2d 784 [1992]; *People v Sanders,* 49 AD2d 610, 611 [1975] [reversing judgment of conviction on ground that police testimony that the defendant sold heroin to another individual in public view, look-

ing straight at people he knew to be narcotics police officers, 10 feet away, since "only a moron would have committed" such a crime]).

Where the testimony of the People's witnesses is unworthy of belief, "the People have not met their burden of coming forward with sufficient evidence and [the court should] grant the motion to suppress" (*People v Berrios*, 28 NY2d 361, 369 [1971]).

As stated in *Matter of Melissa O.* (217 AD2d 1, 4 [1995]), "[g]iven the very tenuous predicate upon which he acted, if [the arresting officer's] handling of the situation now appears reasonable, it can only be because a gun was in fact found. But the finding of the gun must, under the circumstances, be viewed more as a fortuity than the product of appropriately focused investigative efforts."

There is no logical explanation for the defendant and his friends to have been walking down the street with the car fully opened to the sidewalk and a loaded gun in plain view. It strains credibility that if the car door were open, with a gun visible, that the other officers at the scene would not have noticed this as well and immediately restrained the other man instead of letting him walk away. It is more probable that this entire story was created to negate the underlying unbelievability of the reason for the defendant's arrest, allegedly the viewing across five lanes of traffic of the defendant holding a bag of marijuana in his hand while standing behind a car.

"Accordingly, at our level of review, removed though it may be from the actual audition of testimony, it is nevertheless ' "[t]he rule . . . that testimony which is incredible and unbelievable, that is, impossible of belief because it is manifestly untrue, physically impossible, contrary to experience or self-contradictory, is to be disregarded as being without evidentiary value, even though it is not contradicted by other evidence introduced in the case" ' " (*People v Vasquez*, 217 AD2d 466, 471 [1995] [Murphy, J. dissenting] [citations omitted]).

Accordingly, that branch of the defendant's omnibus motion which was to suppress physical evidence should have been granted, the judgment reversed, and the indictment dismissed.