People v Rhames (2021 NY Slip Op 04242)





People v Rhames


2021 NY Slip Op 04242


Decided on July 7, 2021


Appellate Division, Second Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided on July 7, 2021
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Second Judicial Department

REINALDO E. RIVERA, J.P.
SYLVIA O. HINDS-RADIX
FRANCESCA E. CONNOLLY
PAUL WOOTEN, JJ.


2020-01754
 (Ind. No. 2567/17)

[*1]The People of the State of New York, respondent,
v
Jayshawn Rhames, appellant.


Paul Skip Laisure, New York, NY (Leila Hull of counsel), for appellant.
Melinda Katz, District Attorney, Kew Gardens, NY (Johnnette Traill, Joseph N. Ferdnezi, Josette Simmons McGhee, and Sharon Brodt of counsel), for respondent.



DECISION & ORDER
Appeal by the defendant from a judgment of the Supreme Court, Queens County (Joseph A. Zayas, J.), rendered January 30, 2020, convicting him of criminal possession of a weapon in the second degree (two counts), upon his plea of guilty, and imposing sentence. The appeal brings up for review the denial, after a hearing (John Zoll, J.), of that branch of the defendant's omnibus motion which was to suppress physical evidence.
ORDERED that the judgment is reversed, on the facts, the defendant's plea of guilty is vacated, that branch of the defendant's omnibus motion which was to suppress physical evidence is granted, the indictment is dismissed, and the matter is remitted to the Supreme Court, Queens County, for the purpose of entering an order in its discretion pursuant to CPL 160.50.
According to testimony elicited at a suppression hearing, on July 7, 2017, at approximately 4:00 p.m., Police Officers Kimberly Washington and Joseph Montano were driving south in an unmarked vehicle on Tenth Street in Queens when they observed the defendant through a row of parked cars approximately 50 feet ahead walking south on the sidewalk to the right. They both allegedly observed something bulging or protruding out of the defendant's right waistband. Officer Montano pulled over ahead of the defendant, and Officer Washington, who was dressed in plainclothes, exited the vehicle and stepped onto the sidewalk ahead of the defendant. According to Officer Washington, the defendant locked eyes with her and fled. She "immediately start[ed] to run after" the defendant and attempted to grab him with her right hand. Shortly thereafter, the defendant dropped a gun at Officer Washington's feet. Officer Montano also observed the encounter, but according to him, Officer Washington attempted to grab the defendant before he fled and the defendant dropped the gun before Officer Washington gave chase. In any event, the defendant was eventually apprehended, and police recovered the gun, ammunition, and the defendant's DNA profile.
Following the suppression hearing, the Supreme Court denied that branch of the defendant's omnibus motion which was to suppress the gun, the ammunition, and the DNA evidence. The defendant ultimately pleaded guilty to two counts of criminal possession of a weapon in the second degree, without waiving his right to appeal.
"'On a motion to suppress physical evidence, the People bear the burden of going forward to establish the legality of police conduct in the first instance'" (People v Oden, 150 AD3d 1269, 1270, quoting People v Hernandez, 40 AD3d 777, 778). However, it is the defendant who "bears the ultimate burden of proving that the evidence should not be used against him" (People v Berrios, 28 NY2d 361, 367; see People v Casey, 149 AD3d 770, 771).
In People v De Bour (40 NY2d 210), the Court of Appeals established a graduated four-level test for evaluating the propriety of police encounters when a police officer is acting in a law enforcement capacity (see People v Moore, 6 NY3d 496, 498-499). "[L]evel one permits a police officer to request information from an individual and merely requires that the request be supported by an objective, credible reason, not necessarily indicative of criminality; level two, the common-law right of inquiry, permits a somewhat greater intrusion and requires a founded suspicion that criminal activity is afoot; level three authorizes an officer to forcibly stop and detain and individual, and requires a reasonable suspicion that the particular individual was involved in a felony or misdemeanor; level four, arrest, requires probable cause to believe that the person to be arrested has committed a crime" (id. at 498-499; see People v De Bour, 40 NY2d at 223). 
"In order to justify police pursuit, the officers must have 'reasonable suspicion that a crime has been, is being, or is about to be committed'" (People v Clermont, 133 AD3d 612, 613, quoting People v Holmes, 81 NY2d 1056, 1058). Reasonable suspicion is "that quantum of knowledge sufficient to induce an ordinarily prudent and cautious person under the circumstances to believe criminal activity is at hand" (People v Martinez, 80 NY2d 444, 448 [internal quotation marks omitted]). Relevant factors "include, among others, the substance and reliability of the report that brought the officers to the scene, the nature of the crime that the police are investigating, the suspect's behavior and the shape, size, and location of any bulges in the suspect's clothing" (People v Shuler, 98 AD3d 695, 696). "A suspect's '[f]light alone . . . even [his or her] flight in conjunction with equivocal circumstances that might justify a police request for information, is insufficient to justify pursuit'" (People v Clermont, 133 AD3d at 614, quoting People v Holmes, 81 NY2d at 1058). When "combined with other specific circumstances indicating that the suspect may be engaged in criminal activity," however, a suspect's flight may "provide the predicate necessary to justify pursuit" (People v Holmes, 81 NY2d at 1058; see People v Sierra, 83 NY2d 928, 930).
Here, although the Supreme Court credited both of the officers with respect to their interactions with the defendant, their versions of the incident conflicted with each other on key points and could not be simultaneously true. For example, while Officer Washington testified that she began to pursue the defendant immediately and before he dropped the gun, Officer Montano testified that the defendant dropped the gun before he began to flee. Officer Washington also testified that she tried to grab the defendant with her right hand during the chase, whereas Officer Montano testified that Officer Washington attempted to grab the defendant before he ran. It is not clear from either witnesses' testimony when, precisely, either officer identified themselves as police officers to the defendant.
"The credibility determinations of the hearing court are entitled to great deference on appeal and will not be disturbed unless clearly unsupported by the record" (People v Parker, 180 AD3d 1072, 1072; see People v Black, 172 AD3d 895, 896). "'The rule is that testimony which is incredible and unbelievable, that is, impossible of belief because it is manifestly untrue, physically impossible, contrary to experience, or self-contradictory, is to be disregarded as being without evidentiary value, even though it is not contradicted by other testimony or evidence introduced in the case'" (People v Maiwandi, 170 AD3d 750, 751, quoting People v Garafolo, 44 AD2d 86, 88 [internal quotation marks omitted]; see 22 NY Jur, Evidence § 649). "Furthermore, this Court has long made clear that it 'will not hesitate to refuse to credit testimony which has all appearances of having been patently tailored to nullify constitutional objections'" (People v Harris, 192 AD3d 151, 163, quoting People v Lebron, 184 AD2d 784, 784). Under the circumstances presented here, "the 'significant inconsistencies and gaps in memory' evinced by a comparison of the testimony of the" police officers who testified at the hearing "bear negatively on their overall credibility" (People v Harris, 192 AD3d at 164, quoting Citimortgage, Inc. v Feder, 186 AD3d 1315, 1315).
In addition, while the Supreme Court properly discredited certain aspects of Officer Washington's testimony as contrary to common experience and as inconsistent with notations she made in her memo book, it declined to do the same when assessing Officer Montano's credibility even though his testimony at the hearing was also inconsistent with notes he made in his memo book, a statement he gave to another officer around the time of the arrest, prior statements he made to the prosecutor, testimony he gave before the grand jury, and allegations he made in the criminal complaint in this matter.
Even if credited as true, neither officer's account is capable of establishing the legality of Officer Washington's conduct when viewed in isolation. Officer Washington's pursuit of the defendant and her attempt to grab him with her right hand were both level three actions requiring reasonable suspicion (see People v Soler, 189 AD3d 1086, 1087-1088; People v Jones, 164 AD3d 1363, 1366-1367). Setting aside those portions of Officer Washington's account the Supreme Court properly disregarded as incredible, her testimony indicates that she began chasing and grabbing at the defendant in response to his flight. She did not, however, credibly describe anything more than equivocal circumstances in conjunction with the defendant's flight, meaning her testimony was insufficient to justify police pursuit (see People v Clermont, 133 AD3d at 614; People v Haynes, 115 AD3d 676, 676-677). Officer Montano testified that the defendant dropped the gun before he fled, which in turn could justify Officer Washington's pursuit (see People v Baksh, 125 AD3d 988, 989-990). But he also testified that Officer Washington was "trying to take her shield out as she [was] approaching [the defendant] to try to grab him" before the defendant dropped the gun or started to run. Officer Montano thus observed the defendant drop the gun and flee as a result of Officer Washington's attempt to grab him before she had the reasonable suspicion necessary to do so. "Since this level three intrusion was not justified, it cannot be validated by the officer's subsequent observation of the firearm" (People v Jones, 164 AD3d at 1367).
"'Given the severely undermined credibility of the [testifying] officer[s], it is unclear exactly what happened during the encounter between the officer[s] and the defendant, and the hearing court was confronted with choices of possible scenarios'" (People v Harris, 192 AD3d at 165, quoting People v Lebron, 184 AD2d at 787). Under such circumstances, "'multiple choice questions are neither desirable nor acceptable,' and the factfinder should refuse to 'select a credible version based upon guesswork'" (People v Harris, 192 AD3d at 165, quoting People v Lebron, 184 AD2d at 787). The evidence adduced at the hearing established at most that Officer Washington grabbed at the defendant, pursued the defendant, or both, without the requisite level of suspicion, and that this illegality precipitated the recovery of the physical evidence the defendant moved to suppress. Accordingly, exercising our power of independent factual review (see People v Maiwandi, 170 AD3d at 751-752), the Supreme Court erred in denying that branch of the defendant's omnibus motion which was to suppress physical evidence. Without that evidence, there could not be sufficient evidence to prove the defendant's guilt of two counts of criminal possession of a weapon in the second degree. Therefore, the indictment must be dismissed, and the matter remitted to the Supreme Court, Queens County, for the purpose of entering an order in its discretion pursuant to CPL 160.50 (see People v Soler, 189 AD3d at 1088).
In light of the foregoing, we need not reach the defendant's remaining contentions.
RIVERA, J.P., HINDS-RADIX, CONNOLLY and WOOTEN, JJ., concur.
ENTER:
Aprilanne Agostino
Clerk of the Court