People v Leon (2023 NY Slip Op 06754)

People v Leon

2023 NY Slip Op 06754

Decided on December 27, 2023

Appellate Division, Second Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided on December 27, 2023
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Second Judicial Department

COLLEEN D. DUFFY, J.P.
PAUL WOOTEN
LILLIAN WAN
JANICE A. TAYLOR, JJ.

2021-06065
 (Ind. No. 2366/19)

[*1]The People of the State of New York, respondent,
v
Justin Leon, appellant.

Twyla Carter, New York, NY (Anju Alexander of counsel), for appellant.
Eric Gonzalez, District Attorney, Brooklyn, NY (Leonard Joblove, Rachel Raimondi, and Daniel Berman of counsel), for respondent.

DECISION & ORDER
Appeal by the defendant from a judgment of the Supreme Court, Kings County (Miriam Cyrulnik, J.), rendered August 6, 2021, convicting him of attempted criminal possession of a weapon in the second degree, upon his plea of guilty, and imposing sentence. The appeal brings up for review the denial (Jane Tully, J.), after a hearing, of those branches of the defendant's omnibus motion which were to suppress physical evidence and his statements to law enforcement officials.
ORDERED that the judgment is reversed, on the facts, the defendant's plea of guilty is vacated, those branches of the defendant's omnibus motion which were to suppress physical evidence and his statements to law enforcement officials are granted, the indictment is dismissed, and the matter is remitted to the Supreme Court, Kings County, for the purpose of entering an order in its discretion pursuant to CPL 160.50.
According to testimony elicited at a suppression hearing, on April 11, 2019, shortly before midnight, Officer Michael Desposito was a passenger in an unmarked police vehicle traveling eastbound on Wortman Avenue in Brooklyn, when he observed the defendant walking on the sidewalk in the opposite direction along Wortman Avenue. Desposito indicated that he was seated behind the driver, and observed the defendant by looking across the vehicle, out of the passenger-side window. Desposito acknowledged that there were cars parked perpendicularly to the sidewalk, and that the defendant was walking alongside a companion, who was closer to the street than the defendant. Desposito testified that he observed an "L-shaped object" in the thigh area beneath the left leg of the defendant's sweatpants that he believed to be a concealed firearm. Desposito stated that after the police vehicle passed the defendant, the driver made a U-turn to "get even with the [defendant]." Desposito, who was dressed in plain clothes, testified that he got out of the unmarked police vehicle and stated "something along the lines of 'police, hold up, stop.'" Desposito's statements to the defendant during his approach were not audible on a recording obtained from his body-worn camera, which was admitted at the hearing, as Desposito did not press the button to start recording at the time of his approach in accordance with police protocol. As Desposito approached, the defendant fled, and Desposito and his fellow officers pursued the defendant on foot. When the officers caught the defendant, they handcuffed and searched him, resulting in the discovery of a firearm beneath his sweatpants.
Following the suppression hearing, the Supreme Court denied those branches of the defendant's omnibus motion which were to suppress physical evidence and his statements to law enforcement officials. The defendant subsequently entered a plea of guilty to attempted criminal possession of a weapon in the second degree.
"On a motion to suppress, the People bear the burden of going forward to establish the legality of police conduct in the first instance" (People v Brown, 198 AD3d 803, 805). "While great weight must be accorded the credibility findings of the hearing court, this Court has also observed 'that in assessing credibility we should not discard common sense and common knowledge'" (People v Harris, 192 AD3d 151, 163, quoting Matter of Carl W., 174 AD2d 678, 679 [internal quotation marks omitted]). "'The rule is that testimony which is incredible and unbelievable, that is, impossible of belief because it is manifestly untrue, physically impossible, contrary to experience, or self-contradictory, is to be disregarded as being without evidentiary value, even though it is not contradicted by other testimony or evidence introduced in the case'" (People v Harris, 192 AD3d at 163, quoting People v Maiwandi, 170 AD3d 750, 751). "Furthermore, this Court has long made clear that it 'will not hesitate to refuse to credit testimony which has all appearances of having been patently tailored to nullify constitutional objections'" (People v Harris, 192 AD3d at 163, quoting People v Lebron, 184 AD2d 784, 784).
"'In order to justify police pursuit, the officers must have reasonable suspicion that a crime has been, is being, or is about to be committed'" (People v Ravenell, 175 AD3d 1437, 1438, quoting People v Furrs, 149 AD3d 1098, 1099 [internal quotation marks omitted]; see People v Holmes, 81 NY2d 1056, 1058). Reasonable suspicion exists where there is a "quantum of knowledge sufficient to induce an ordinarily prudent and cautious man [or woman] under the circumstances to believe criminal activity is at hand" (People v Cantor, 36 NY2d 106, 112-113; see People v Dantzler, 208 AD3d 590, 591). "A suspect's flight alone or in conjunction with equivocal circumstances that might suggest a police request for information is insufficient to justify pursuit," and "[p]ursuit is only authorized when flight is combined with circumstances indicating that the suspect might be engaged in criminal activity" (People v Rhames, 218 AD3d 610, 612; see People v Holmes, 81 NY2d at 1058; People v Ravenell, 175 AD3d at 1439).
Here, the People failed to establish the legality of the police conduct in the first instance, as Desposito's testimony was incredible as a matter of law and patently tailored to meet constitutional objections (see People v Harris, 192 AD3d at 164-165; People v Lebron, 184 AD3d at 787; People v Maiwandi, 170 AD3d at 751; People v Lewis, 195 AD2d 523, 524). Desposito's testimony that he was able to observe an "L-shaped object" beneath the defendant's sweatpants as the police vehicle drove past the defendant strains credulity and defies common sense, as Desposito's fleeting view of the defendant after dark was obstructed by parked cars and an individual walking directly alongside the defendant, closer to the street. Moreover, Desposito acknowledged that the defendant was walking in the opposite direction of the police vehicle along Wortman Avenue, and thus, Desposito observed the defendant through the passenger-side window from the opposite side of the defendant, where the gun was purportedly concealed on the defendant's left leg. Further, Desposito provided inconsistent testimony as to whether he followed police protocol with respect to activating the recording on his body-worn camera, and whether he canvassed the area for video surveillance footage after the arrest. Consequently, under the circumstances presented, we find that Desposito's testimony was unworthy of belief (see People v Harris, 192 AD3d at 164).
In any event, even if Desposito's testimony is credited as true, his observations did not constitute specific circumstances indicative of criminal activity so as to establish the reasonable suspicion necessary to lawfully pursue the defendant, even when coupled with the defendant's flight (see People v Holmes, 81 NY2d at 1058; People v Rhames, 196 AD3d 510, 514). The People did not present any evidence that the defendant, who was merely walking on a sidewalk with a companion, was acting in a suspicious manner, or that a bulge resembling the shape of a firearm was observed in the area of the defendant's waistband (see People v Holmes, 81 NY2d at 1058; People v Rhames, 218 AD3d at 612; People v White, 159 AD3d 741, 745; cf. People v Thanh Do, 85 AD3d 436). Consequently, without this evidence, the equivocal circumstances, in conjunction with the defendant's flight, were insufficient to justify police pursuit of the defendant (see People v Rhames, [*2]218 AD3d at 612; People v Clermont, 133 AD3d 612, 614).
Accordingly, those branches of the defendant's omnibus motion which were to suppress physical evidence and his statements to law enforcement officials should have been granted, the indictment must be dismissed, and the matter must be remitted to the Supreme Court, Kings County, for the purpose of entering an order in its discretion pursuant to CPL 160.50 (see People v Rhames, 196 AD3d at 515).
In light of our determination, we need not reach the defendant's remaining contentions.
DUFFY, J.P., WOOTEN, WAN and TAYLOR, JJ., concur.
ENTER:
Darrell M. Joseph
Acting Clerk of the Court