People v Sidbury (2025 NY Slip Op 02223)

People v Sidbury

2025 NY Slip Op 02223

Decided on April 16, 2025

Appellate Division, Second Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided on April 16, 2025
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Second Judicial Department

MARK C. DILLON, J.P.
PAUL WOOTEN
WILLIAM G. FORD
PHILLIP HOM, JJ.

2018-05854
 (Ind. No. 8704/13)

[*1]The People of the State of New York, respondent,
v
Steven Sidbury, appellant.

Patricia Pazner, New York, NY (Sam Feldman of counsel), for appellant.
Eric Gonzalez, District Attorney, Brooklyn, NY (Leonard Joblove, Sholom J. Twersky, and Sawyer White of counsel), for respondent.

DECISION & ORDER
Appeal by the defendant from a judgment of the Supreme Court, Kings County (William M. Harrington, J.), rendered November 17, 2017, convicting him of manslaughter in the first degree and criminal possession of a weapon in the second degree (two counts), upon a jury verdict, and imposing sentence. The appeal brings up for review the denial, after a hearing (Michael A. Gary, J.), of that branch of the defendant's omnibus motion which was to suppress physical evidence.
ORDERED that the judgment is modified, on the law, by vacating the sentence imposed; as so modified, the judgment is affirmed, and the matter is remitted to the Supreme Court, Kings County, for further proceedings consistent herewith.
According to testimony elicited at a suppression hearing from Officer James Arguila, on August 22, 2013, at approximately 11:45 p.m., he was on patrol in a marked police vehicle with two partners, and they parked to observe two groups engaged in a dispute. Arguila observed that the defendant had his hand in the right pocket of his sweatshirt, and "it appeared there was something in his hand that was larger than the hand and it seemed heavy." As one of Arguila's partners got out of the police vehicle to speak with an individual accompanying the defendant, Arguila observed that the defendant "dipped down" by the wheel well of a vehicle, and Arguila "wasn't sure if [the defendant] was putting down a gun . . . by the wheel." Arguila then stepped out of the police vehicle to "investigate." Arguila indicated that when he got out of the police vehicle, the defendant walked behind another individual, "blading his body towards us with . . . the right half of his body behind the [other] individual's body." Arguila then asked the defendant to remove his hand from his pocket, and the defendant responded, "[y]ou can't stop and frisk anymore." As Arguila approached the defendant, the defendant started running away, and Arguila pursued the defendant on foot. During the pursuit, the defendant tripped, and as he removed his hand from his right sweatshirt pocket to brace himself, a firearm fell out of that pocket. Arguila then took possession of the firearm, while his partner pursued and apprehended the defendant, who was arrested. Following the defendant's arrest, the police learned that the firearm recovered from the defendant was the same firearm used in a fatal shooting that took place several days prior on August 18, 2013.
At the close of the hearing, the Supreme Court found, among other things, that Officer [*2]Arguila had reasonable suspicion to pursue the defendant when he fled, and therefore, denied that branch of the defendant's omnibus motion which was to suppress the firearm dropped by the defendant during the pursuit.
Following a jury trial, the defendant was convicted of manslaughter in the first degree based upon the shooting on August 18, 2013, criminal possession of a weapon in the second degree based upon the defendant's possession of a firearm on that date, and a separate count of criminal possession of a weapon in the second degree based upon the defendant's possession of a firearm on August 22, 2013, the date of his arrest.
"On a motion to suppress physical evidence, the People bear the burden of going forward to establish the legality of police conduct in the first instance" (People v Rhames, 196 AD3d 510, 511-512 [internal quotation marks omitted]; see People v Harris, 192 AD3d 151, 157-158). "'In order to justify police pursuit, the officers must have reasonable suspicion that a crime has been, is being, or is about to be committed'" (People v Leon, 222 AD3d 998, 999 [internal quotation marks omitted], quoting People v Ravenell, 175 AD3d 1437, 1438). "Reasonable suspicion exists where there is a 'quantum of knowledge sufficient to induce an ordinarily prudent and cautious man [or woman] under the circumstances to believe criminal activity is at hand'" (id., quoting People v Cantor, 36 NY2d 106, 112-113). "'A suspect's flight alone or in conjunction with equivocal circumstances that might suggest a police request for information is insufficient to justify pursuit'" (id., quoting People v Rhames, 218 AD3d 610, 612; see People v Holmes, 81 NY2d 1056, 1058). "However, a defendant's flight plus 'other specific circumstances indicating that the suspect may be engaged in criminal activity, may give rise to reasonable suspicion, the necessary predicate for police pursuit'" (People v Ravenell, 175 AD3d at 1439, quoting People v Sierra, 83 NY2d 928, 929).
Here, based upon the totality of the circumstances, Officer Arguila had a founded suspicion that criminal activity was afoot, which gave rise to the officer's right to inquire and to ask the defendant to remove his hand from his sweatshirt pocket (see People v Baker, 205 AD3d 815, 817; People v Owens, 127 AD3d 788). Moreover, by virtue of the defendant's flight in response to Arguila's request that the defendant remove his hand from his sweatshirt pocket, Arguila's right of inquiry ripened into reasonable suspicion to pursue the defendant (see People v Jackson, 163 AD3d 995, 995-996; People v Soscia, 96 AD3d 1081). Since the pursuit of the defendant was justified, the firearm he dropped during the pursuit was not subject to suppression (see People v Sierra, 83 NY2d 928; People v Soscia, 96 AD3d at 1082). Accordingly, the Supreme Court properly denied that branch of the defendant's omnibus motion which was to suppress the firearm dropped by the defendant.
The defendant's contention that Penal Law § 265.03(3) is unconstitutional in light of the decision in New York State Rifle & Pistol Assn., Inc. v Bruen (597 US 1) is unpreserved for appellate review, as the defendant failed to raise a constitutional challenge before the Supreme Court (see People v Baumann & Sons Buses, Inc., 6 NY3d 404, 408; People v Belizaire, 222 AD3d 875, 877; People v Manners, 217 AD3d 683, 685). In any event, the defendant's contention is without merit, as the decision in Bruen had no impact on the constitutionality of New York State's criminal possession of a weapon statutes (see People v Belizaire, 222 AD3d at 877; People v Joyce, 219 AD3d 627, 628).
"A defendant has the right to be present at all material stages of trial, including sentencing" (People v Ousmane, 183 AD3d 762, 763 [citation and internal quotation marks omitted]; see People v Stewart, 28 NY3d 1091, 1092; People v Rodriguez, 186 AD3d 625, 625-626; see also CPL 380.40). "A defendant who has been convicted of a felony may waive his right to be present at sentencing, but must do so expressly" (People v Ousmane, 183 AD3d at 763 [internal quotation marks omitted]; see People v Stewart, 28 NY3d at 1092; People v Rodriguez, 186 AD3d at 626). Here, the defendant was not produced at sentencing, and the record is devoid of any indication that he either expressly waived his right to be present or forfeited that right by willfully absenting himself from court or engaging in disruptive conduct on the date of sentencing (see People v Stewart, 28 NY3d at 1092; People v Berry, 206 AD3d 755, 756; People v Umar, 203 AD3d 964, 965; cf. People v Corley, 67 NY2d 105, 110; People v Ousmane, 183 AD3d at 763). Thus, under the circumstances [*3]of this case, the Supreme Court's failure to have the defendant produced for sentencing violated the defendant's fundamental right to be present. Accordingly, we remit the matter to the Supreme Court, Kings County, for resentencing on the defendant's convictions. In light of our determination, we express no view on whether the sentence imposed was excessive.
In light of our determination, we need not reach the defendant's remaining contentions.
DILLON, J.P., WOOTEN, FORD and HOM, JJ., concur.
ENTER:
Darrell M. Joseph
Clerk of the Court